DRIVER, Circuit Judge.
The parties dispute by petition and cross petition for writ of certiorari the correctness of an order of the Florida Industrial Commission affirming an award of compensation by a Deputy Commissioner.
Claimant Dickson as of October 30, 1963, was an employee of the Gadsden County Board of Public Instruction, performing the duties of school teacher and basketball coach at Greensboro High School.
On the above date he suffered a sudden and disabling cerebral hemorrhage while engaged in his coaching duties. The record reveals that at the time of the hemorrhage he was strenuously running back and forth over the basketball court refereeing a practice game between his own team and one made up of alumni. Claimant lapsed into unconsciousness and was taken first to a local physician in Quincy, thence immediately to Jacksonville for diagnosis and treatment by Dr. Howard C. Chandler, a neurosurgeon.
Dr. Chandler diagnosed claimant’s illness as a cerebral hemorrhage of the subarchi-noid type resulting from a rupture of an arteriovenous malformation of the brain. It was the doctor’s medical opinion that the sole and proximate cause of Mr. Dickson’s cerebral hemorrhage was a pre-existing, *564 congenital deformity of the blood vessels of the brain.
The doctor was of the further opinion that claimant’s strenuous exertions immediately preceding and up to the time of hemorrhage contributed nothing to the rupture of the blood vessels. It was his firm, fixed and abiding expert opinion that the rupture was natural, inevitable and spontaneous; caused exclusively by the disease-weakened, deteriorated blood vessels themselves.[1]
Dr. Chandler’s testimony was the only evidence tending to prove the cause of the claimant’s cerebral hemorrhage and he makes it appear as clear as spring water that there was no causal relation between claimant’s illness and his employment.
In an effort to overcome the conclusive nature of the doctor’s testimony however, claimant’s counsel on cross examination inquired if there was not a suggested theory [2] of medical science that physical strain or over-exertion might induce, or contribute to cerebral hemorrhage in one afflicted with a congenital malformation of the blood vessels of the brain. Dr. Chandler refused to concede the existence of such a theory though admitting that it “might” exist. In any event, he flatly rejected and discounted the validity of such theory and reiterated his conclusion that it was just coincidence that the blood vessels ruptured during the basketball game.[3]
The Deputy Commissioner apparently received as a proven fact the suggested theory and upon this predicate ruled that claimant’s injury was caused by over-exertion in his employment which accelerated the rupture of the malformation of the blood vessels.
Based on these findings of fact, the Deputy Commissioner apportioned the award of compensation 50% to the injury resulting from over-exertion and 50% to the pre-existing congenital malformation of the blood vessels of the brain.
There is no presumption that an injury for which compensation is claimed *565 is causally connected to the claimant’s employment, Pridgen v. International Cushion Co., Fla. (1956) 88 So.2d 286. A claimant must prove causal connection between his employment and the injury; otherwise, he cannot recover, Superior Mill Work v. Gabel, Fla. (1956) 89 So.2d 794. Even though a claimant is not bound to prove his claim by a preponderance of the evidence, Johnson v. Dicks, Fla. (1954) 76 So.2d 657, speculation or conjecture is not, however, sufficient to establish causal connection between injury and employment, Johnson v. Dicks, supra, Reed v. Brinson Electric Company, Fla. (1951) 50 So.2d 877.
A Deputy Commissioner is not bound to accept the opinion testimony of medical experts to the exclusion of conflicting testimony of lay or non-expert witnesses, Ortkiese v. Clarson and Ewell Engineering, Fla. (1961) 126 So.2d 556. Nonetheless, to justify an award of compensation, there must be an evidentiary showing by competent substantial evidence that a causal relation exists between the employment and the injury, Arkin Construction Co. v. Simpkins, Fla. (1957) 99 So.2d 557.
This brings us to the nub of the problem. When considered in the light of the foregoing principles, was the Deputy Commissioner justified in basing an award on the unsupported, indeed discredited, theory? Or, stated otherwise, does the suggested theory constitute competent and substantial evidence to support the award? We think not.
This Court is firmly bound to the rule that where there is conflict in the testimony and evidence, a Deputy Commissioner’s ruling on these conflicts shall stand and not be disturbed. The Deputy is the undisputed trier of facts and his province will not be invaded. This rule giving conclusive correctness to the Deputy’s findings on disputed facts does not, however, carry with it a presumption of infallibility as to the conclusions he may have drawn from the facts found by him to be proved.
Recently, this Court, speaking through Justice Thomas in Cheatham v. Fruit Bowl, Inc., 184 So.2d 171, reiterated the foregoing principles and referring to the examiners’ findings of fact stated:
“Although his province may not be invaded * * * the unseverable restriction remains, i. e., that the testimony he chooses must be competent, substantial, logical and reasonable.”
We must conclude that the rulings of the Deputy Commissioner do not accord with the above-stated principles, and that his acceptance of the suggested but unsupported theory over the clear, explicit and uncontradicted testimony of Dr. Chandler was error. An award of compensation must be supported by evidence in the record; otherwise, it partakes of the character of a vagrant in having no visible means of support and consequently must fall.
Claimant urges that the holding of this Court in Hastings v. City of Ft. Lauderdale Fire Dept., 178 So.2d 106 is applicable to the facts of the case under consideration.
We have not overlooked this argument. But finding as we have, that there is not competent evidence according with reason that claimant’s injuries resulted from unusual over-exertion in the cause of his employment.
A sharp distinction is apparent between the Hastings case and this one. In Blast-ings there was competent evidence that the employee’s death resulted from ventricular fibrillation or arrythmia, induced by overexertion in the course of employment. Such causal relation is not shown here. Consequently, rather than Hastings v. City of Ft. Lauderdale Fire Dept., supra, we find Victor Wine Co., Inc. v. Beasley, Fla., 141 So.2d 581, controlling.
Certiorari is granted, the order reviewed is quashed and the cause dismissed.
THORNAL, C. J., and TBIOMAS, ROBERTS and ERVIN, JJ., concur.

. “Q In your opinion what was the cause, if any known, of the rupture or hemorrhage occurring in this particular area?
A In my opinion it’s a result of the nat-tural course of the disease, the walls of the blood vessels having a tendency to disintegrate and break down.
Q Are you familiar at all with the term ‘spontaneous hemorrhage’ ?
A Yes.
Q What does that term mean?
A To me it means a hemorrhage which occurs without any apparent provocation or cause, simply a rupturing.
Q In your opinion would this fall in the category of a spontaneous hemorrhage?
A Yes.”
“Q Do you figure that it is just a coincidence that the vessel ruptured at this particular time under the particular circumstances, or would you tie it more to the refereeing of the basketball game, based on your professional experience and ideas ?
A No. I think it’s a coincidence.”

. “Q Are there any theories in your field of specialized medicine that that could be a cause for a cerebral accident happening under the facts and circumstances that we are dealing with?
A It’s possibly been suggested from time to time, but I don’t know of any particular theory or diagnosis of this sort.”
“Q Is there any theory in medicine, in your field of medicine, that stress and strain would be a precipitating cause of this type of cerebral accident, being the rupture or hemorrhage of that weakened cell?
A Yes. That’s been proposed. * * *
A There’s been a theory suggested from time to time that physical exertion causing a rise in blood pressure might precipitate a rupture of a malformation of this sort.”
“Q Doctor, I take it that you do not subscribe to this theory that you just related, that is, of the physical exertion causing a rise in the blood pressure and thereby causing the hemorrhage?
A That’s correct.”

.“Q Do you figure that it is just a coincidence that the vessel ruptured at this particular time under the particular circumstances, or would you tie it more to the refereeing of the basketball game, based on your professional experience and ideas?
A No. I think it’s a coincidence.”