523 So.2d 1190 (1988)
MARTIN MARIETTA CORPORATION and Scott Wetzel Services, Appellants,
v.
Robert GLUMB, Appellee.
No. 87-106.
District Court of Appeal of Florida, First District.
March 25, 1988.
*1191 Bernard J. Zimmerman and Mathew D. Staver of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for appellants.
J. David Parrish of Hurt & Parrish, P.A., Bill McCabe of Shepherd, McCabe & Cooley, Orlando, for appellee.
JOANOS, Judge.
Martin Marietta Corporation and Scott Wetzel Services (E/C) appeal a workers' compensation order granting payment of medical bills, temporary total disability (TTD) and temporary partial disability (TPD) benefits, and attorney's fees. The E/C present four issues for our review: (1) whether there is competent substantial evidence to establish a causal relationship between chemical exposure at the work place and the chest pain and shortness of breath experienced by claimant Robert Glumb, (2) whether there is competent substantial evidence to support an award of payment of medical bills, (3) whether the deputy commissioner erred as a matter of law in awarding an attorney's fee of $30,000, and (4) whether the deputy commissioner erred as a matter of law in awarding costs, TTD, and TPD benefits. We affirm the order appealed, but remand for presentation of proper proof of the amounts of the medical bills.
Claimant began working for Martin Marietta in August 1981. A pre-employment physical performed at that time indicated that claimant had no significant health problems. In March 1982, after a training period, claimant was transferred to the ablative bonding area, where he operated machines that cut heat shields. The overall ablative area covers approximately 1600 square feet, and houses fifteen or sixteen machines. In 1984, the 70 X 30 foot bonding area was completely enclosed. During his employment with Martin Marietta, claimant was exposed to the dust and fumes incident to machine cutting of the heat shields, as well as to the chemicals trichloroethylene, cotton phenolics, silica phenolics, silica dust, epoxy mixes, and toluene. The ventilation systems which served the ablative area were shut down from time to time, and the bonding area did not have a separate filter system during the time that claimant worked there.
In mid 1985, claimant began to experience breathing difficulties. Any physical exertion left him breathless and with a sense of tightness in the chest area. In addition, claimant suffered abdominal pain and blood in his stool. On October 13, 1985, claimant suffered from chest pains contemporaneously with the feelings of breathlessness and tightness in his chest. He was taken to Orlando Regional Medical Center, where a catherization was performed on October 16, 1985. According to Dr. Partain, cardiologist, the coronary arteriogram was almost entirely normal, and there was no evidence of a prior myocardial *1192 infarction. Dr. Partain's final diagnosis was acute chest pain, non-cardiac in nature, of uncertain causes. Dr. Partain stated that certain toxic chemicals can cause cardiomyopathy, however, in claimant's case he found no medical or cardiology problem that he would relate to exposure at Martin Marietta.
Upon his release from the hospital, claimant's chest pains were gone and he returned to work. When he had been back at work less than a month, he experienced the same shortness of breath and chest pain. Claimant then consulted Dr. Myint, a specialist in occupational medicine and toxicology. Dr. Myint performed a pulmonary function study, which he compared to prior pulmonary function studies which had been performed on claimant in 1981 and 1982. The comparison showed a significant decline in function, which Dr. Myint attributed to chemical irritants caused by industrial solvents. In addition, Dr. Myint performed chest x-rays and blood tests. Dr. Myint diagnosed claimant's condition as chest pain due to coronary vasospasm caused by industrial solvents, and stated that within a reasonable degree of medical certainty, claimant's condition was causally related to his exposure to chemicals at Martin Marietta.
Claimant was also treated by Dr. Nimmagadda in 1986. Dr. Nimmagadda diagnosed claimant's condition as ischemic heart disease, but concluded he could not prove or disprove a causal relationship between claimant's condition and his job. Although he was unable to establish a causal relationship, the doctor said there was no objective evidence of significant coronary artery disease to explain claimant's angina, therefore, it had to be explained on a nonorganic basis, which could include stress, exposure to chemicals, and small vessel disease.
In March 1986, claimant was seen by Dr. Alexiou, on a referral from Martin Marietta's Occupational Health Department. Dr. Alexiou obtained Material Data Safety Sheets, which indicated the chemicals claimant was exposed to at work. He diagnosed claimant's condition as reaction to exposure due to chemical sensitivity to the workplace environment and the chemicals in that environment. In Dr. Alexiou's opinion, the cause was a combination of chemicals or a synergistic effect, with trichloroethylene as the primary offending chemical. Dr. Alexiou, like Dr. Myint, found that claimant suffered from a work-related industrial exposure.
Mr. Kwon, psychologist and industrial hygienist, testified on behalf of the E/C. Mr. Kwon stated that the chemicals claimant was exposed to did not cause the symptoms claimant presented. On cross examination, however, Mr. Kwon acknowledged that in animals trichloroethylene can cause neuromuscular reflex changes, sudden death, respiratory failure, lung irritation, cardiac arrest, liver dysfunction, and staggered gait.
Dr. Dixon, specialist in the field of occupational health and toxicology, testified unequivocally that petrochloroethane, acetone, and toluene cannot cause the symptoms that claimant presented. On cross examination, Dr. Dixon admitted that the Material Safety Data Sheets expressly stated that trichloroethylene can have harmful effects on the central nervous system, liver, or heart, and that phenol itself can be an irritant. However, Dr. Dixon discounted the warnings contained on the sheets, on the ground that Safety Material Data Sheets are unreliable.
In addition to the extensive medical evidence presented in this case, the deputy heard testimony from other Martin Marietta employees who were working or had formerly worked in the ablative area. These employees all suffered physical complaints similar to those experienced by claimant. Seven of the lay witnesses belong to the same union as claimant, and one of the witnesses is a non-union administrator. This witness stated that he had been transferred to an administrative post due to a heart condition and other medical problems. He said he had been exposed to toxic chemicals for more than a year and suspected that exposure caused his problems.
*1193 The deputy also received the testimony of an industrial hygienist who worked at Martin Marietta from August 1981 through June 14, 1985. This witness was not accepted as an expert, but her lay testimony was considered by the deputy commissioner with respect to the ablative bonding area during the time of her employment. This witness established that there had been numerous employee complaints of headaches, nausea, lightheadedness, and fatigue related to the ablative area. She stated that after 1982, there was increased production with additional machines being operated in the ablative area, but there was a delay in updating the ventilation system to accommodate the additional machines.
On April 10, 1986, claimant was released by Martin Marietta. Dr. Nimmagadda advised claimant that he was unable to work around chemicals, and Martin Marietta had no other employment for him.
In a detailed order entered April 13, 1987, the deputy commissioner found that claimant sustained a compensable injury on October 13, 1985, and on April 10, 1986, the date of the last injurious exposure. The deputy commissioner further found that claimant had not reached maximum medical improvement, and that he was entitled to TTD benefits from April 10, 1986, to October 13, 1986, and TPD benefits from October 24, 1986, and continuing so long as he remained TPD. The deputy commissioner based this finding on the fact that Dr. Nimmagadda stated unequivocally that claimant should not work at Martin Marietta, and that the forms completed by Dr. Nimmagadda dated May 7, 1986, July 16, 1986, and September 8, 1986, indicated that claimant was unable to work and was house-confined from April 10, 1986, for an indefinite period of time. Finding that the E/C had not furnished necessary forms for filing for TPD benefits, the deputy commissioner excused claimant's lack of a job search subsequent to October 23, 1986. The E/C were directed to pay for medical care incurred subsequent to October 13, 1985, the medical bills of Dr. Nimmagadda and Dr. Myint, costs, and attorney's fees.
To establish a work-related injury under an exposure theory, a claimant must demonstrate:
(1) that he has had a prolonged exposure;
(2) a causal relationship between the exposure and the injury or aggravation; and
(3) that he has been subject to a hazard greater than that to which the general public is exposed.
City of Miami v. Tomberlin, 492 So.2d 433 (Fla. 1st DCA 1986); Dean Jaye Construction v. Johnson, 486 So.2d 664 (Fla. 1st DCA), review denied, 494 So.2d 1150 (Fla. 1986); Brevard County Mental Health Center v. Kelly, 420 So.2d 911 (Fla. 1st DCA 1982); Lake v. Irwin Yacht & Marine Corporation, 398 So.2d 902 (Fla. 1st DCA 1981); Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA), pet. for review denied, 388 So.2d 1119 (Fla. 1980).
Under either an exposure theory or an occupational theory, a claimant must show a causal relationship between the injury and the employment. Lake v. Irwin Yacht & Marine, 398 So.2d at 904. In Harris v. Josephs of Greater Miami, 122 So.2d 561, 562 (Fla. 1960), the court explained that in cases involving disease or physical defect, as opposed to external injury, "[t]here must be some clear evidence rather than speculation or conjecture establishing a causal connection between a claimant's injury and h[is] employment." See also Lake v. Irwin Yacht, 398 So.2d at 904. The causal relationship between accident and disability must be based on a reasonable medical probability. Although in some instances, reasonable medical probability may be established by either lay or medical testimony, there are times when 
lay testimony alone is not sufficient ... lay testimony can establish the necessary relationship as to conditions and symptoms which are within the actual knowledge and sensory experience of the claimant. However, lay testimony is not sufficient to establish the causal relationship between the accident and conditions such as high blood pressure, which are *1194 not readily observable or discoverable without medical examination.
Decks, Inc. of Florida v. Wright, 389 So.2d 1074, 1076 (Fla. 1st DCA 1980). See also Metric Constructors, Inc. v. Chiles, 429 So.2d 1292 (Fla. 1st DCA 1983).
Two of the above cited cases present fact scenarios analogous to that presented in the instant case. In Lake v. Irwin Yacht & Marine, the employee's breathing difficulties coincided with her employment at Irwin Yacht. Her duties caused her to be exposed to fumes from teak oil and acetone, as well as fiberglass dust. After a period of time, the employee sought medical treatment and eventually had to be hospitalized. Medical tests established that the employee was suffering from bronchitis, but did not establish the cause of the bronchitis. One doctor testified that there was no known chemical test that would positively identify whether a specific chemical was the cause of bronchitis. Another doctor testified that a challenge test could identify the specific chemical, but felt such a test was not advisable. In the absence of a test, it was still this physician's opinion, based upon the employee's history, that chemical exposure was the most likely cause of her bronchitis. Another physician testified that the chemical the employee was exposed to would cause irritations to almost anyone subject to the same level of exposure. On these facts, this court concluded a causal connection had been established between the disease and the employment.
In a somewhat similar vein, in Dean Jaye Construction v. Johnson, one doctor testified that the claimant's exposure to urethane fumes could have precipitated a myocardial infarction. Another physician testified unequivocally that the fumes had no relationship at all to the claimant's heart attack. However, this same physician was unable to express an opinion whether the claimant's exposure affected his heart condition. The deputy found the greater weight of the evidence suggested claimant's exposure was a contributing cause to his myocardial infarction. This court affirmed the deputy's findings, concluding the deputy's interpretation of the testimony was supported and should not be disturbed. 486 So.2d at 665.
In the instant case, the main thrust of E/C's argument regarding the causal relationship, is that Dr. Myint was not qualified to testify as an expert, and that Dr. Alexiou's opinion regarding causal relationship was based on incomplete data. On this premise, the E/C maintain the testimony of these two experts does not constitute competent substantial evidence to sustain the deputy's finding. We disagree. The deputy commissioner's stated reasons for accepting Dr. Myint's qualifications are supported fully by the record, as is his finding that Dr. Alexiou denied stating in a telephone conversation with Mr. Kwon that he had changed his mind with respect to his opinion that claimant suffered from exposure to industrial solvents. Accordingly, we find this record contains competent substantial evidence to support the deputy commissioner's finding that there is a causal relationship between claimant's chest pain and shortness of breath and his exposure to chemicals at Martin Marietta, and affirm the deputy commissioner's determination in this regard.
The second issue presented in this appeal concerns that portion of the order directing the E/C to assume responsibility for Dr. Myint's and Dr. Nimmagadda's bills, and a bill for claimant's hospitalization at Orlando Regional Medical Center. Generally, an order directing payment of medical bills is improper unless the medical bills are placed in evidence or there is clear and unequivocal testimony as to the amount of the bills. Burroughs Corporation v. Glover, 488 So.2d 620 (Fla. 1st DCA 1986); Leonard M. King Pest Control v. Dixon, 474 So.2d 12 (Fla. 1st DCA 1985); Jung v. City of Sarasota, 457 So.2d 577 (Fla. 1st DCA 1984). Recovery for medical bills is not precluded, however, where the record establishes the causal connection between the charges and the claimant's injury, and there is testimony as to the amount of the charges. Mayberry v. Sunland Training Center, 404 So.2d 810 (Fla. 1st DCA 1981). See also Sunland Center at *1195 Miami v. Rudolph, 521 So.2d 132, 134 (Fla. 1st DCA 1988).
Although the record in this case establishes a causal relationship between the charges for medical services and claimant's injury, and there is some testimony as to the amount of one of the bills, we find there is insufficient evidence to establish the amount of all of the bills. Therefore, we affirm that portion of the order directing payment of medical bills, but remand for submission of proper proof of the amount of the bills.
The third issue concerns the E/C's assertion that the deputy commissioner erred as a matter of law in awarding an attorney's fee of $30,000 for the services provided by claimant's attorney. Section 440.34, Florida Statutes, embodies legislative intent to standardize attorney's fee awards in the workers' compensation area, unless exceptional circumstances warrant a departure from the recommended fee schedule. Roundtree Transport, Inc. v. Godek, 412 So.2d 66 (Fla. 1st DCA 1982), pet. for review denied, 443 So.2d 979 (Fla. 1983).
Although the amount of benefits obtained is a significant factor, it is not determinative of the maximum amount that can be awarded as a fee. Davis v. Keeto, Inc., 463 So.2d 368, 371 (Fla. 1st DCA 1985), pet. for review denied, 475 So.2d 695 (Fla. 1985). Furthermore, an attorney's fee award will not be set aside merely because it exceeds the statutory rate, when the deputy commissioner's order reflects an appropriate consideration of the section 440.34(1) factors. Brevard County Mental Health Center v. Adams, 431 So.2d 167 (Fla. 1st DCA 1982).
In keeping with legislative intent, when reviewing the propriety of an attorney's fee award, this court will examine the findings of fact rendered by the deputy commissioner pursuant to the statutory criteria set forth in section 440.34(1). Mt. Sinai Medical Center v. Samuels, 453 So.2d 82, 83 (Fla. 1st DCA 1984). Among the major considerations involved in the determination of a workers' compensation attorney's fee are the time and labor reasonably required to prosecute the claim, and the hourly fee customarily charged in the area for similar services. Rivers v. SCA Services of Florida, Inc., 488 So.2d 873 (Fla. 1st DCA 1986).
Our review of the findings set forth in the order regarding the attorney's fee award in this case reveals that the deputy commissioner gave a proper consideration to the section 440.34(1) criteria. Pursuant to that process, the deputy commissioner reduced the 177 hours which claimant's attorney stated he had expended, finding instead that 150 hours constituted a reasonable time for preparation and prosecution of the case. In addition, the deputy commissioner took into account the difficulty and complexity of the issues, the skill required to perform the services, the hourly rates charged in the area for similar services, the value of the benefits obtained, the skill and expertise of opposing counsel, the contingent nature of the case, and the opinions rendered by experts on the question.
The $30,000 fee award in this case was calculated on the basis of 150 hours of attorney time expended at the rate of $200 per hour. Although the attorney's fee exceeds the benefits obtained, this factor is not determinative of the reasonableness of the fee. The deputy commissioner properly discussed the applicability of each of the statutory criteria in the context of this case. We find there is competent substantial evidence to support the attorney's fee award, and affirm the deputy commissioner's determination on this point.
The final point raised in this appeal concerns the deputy commissioner's award of costs, TTD and TPD benefits. The E/C predicate their argument on this point on their contention that claimant has not demonstrated a causal relationship between his injury and his chemical exposure at Martin Marietta. We have decided the causal relationship issue adversely to the position advanced by E/C, and affirm the deputy commissioner's award of costs, TTD, and TPD benefits.
In summary, we find the record reflects competent substantial evidence to support *1196 the deputy commissioner's finding that claimant has suffered a compensable injury under an exposure theory. The record also reflects that the E/C were on notice concerning claimant's medical expenses, and thus were not prejudiced by claimant's failure to place the medical bills in evidence. Further, although the attorney's fee award exceeds the fee schedule in terms of relationship to the amount of benefits obtained, it is consistent with the statutory criteria and relevant case law. Finally, we find the challenge to the awards of TTD and TPD benefits is without merit, since the record demonstrates a causal relationship between claimant's disability and the work-related chemical exposure.
Accordingly, the deputy commissioner's order is affirmed, but the case is remanded for presentation of proper proof with regard to the medical bills.
SHIVERS and THOMPSON, JJ., concur.