573 So.2d 946 (1991)
Janet Suzanne WILEY, Appellant,
v.
SOUTHEAST ERECTORS, INC. and Underwriters Adjusting Co. and Crims, Inc., Appellees.
No. 89-1527.
District Court of Appeal of Florida, First District.
January 15, 1991.
W. Thomas Copeland, Kurt Andrew Simpson, P.A., Jacksonville, for appellant.
Daniel C. Shaughnessy, Coker, Myers, Schickel, Cooper & Sorenson, P.A., Jacksonville, for appellees.
JOANOS, Judge.
Claimant in this workers' compensation case appeals an order of the judge of compensation *947 claims denying compensability of her claim for benefits based on an exposure theory. Claimant contends the judge erred in (1) finding that she failed to prove causation of her injury by work exposure, and (2) in finding that three of the pulmonary experts consulted on this case opined that claimant did not have silicosis. We reverse and remand for further proceedings.
The claimant was employed as a welder by Southeast Erectors from June 25, 1984, to October 8, 1985, and from April 8, 1986, to May 8, 1986. Claimant testified that she had no lung or breathing problems prior to her employment with Southeast Erectors. Moreover, from June 1984 until June 1985, claimant worked at various job sites for Southeast Erectors with no lung, breathing, or other health problems. However, in June 1985, claimant began working at a job site at Kings Bay, Georgia. At that time, she first came into contact with a product known as Blaze-Shield. Blaze-Shield is used as a fireproofing protective coating, usually on structural steel, but may be used on other parts of buildings as well. Blaze-Shield was being sprayed on certain areas at the Kings Bay job site. Claimant's duties involved chipping and cleaning the material off the metal beams with a chipping hammer and a wire brush, so the beams could be welded. In the cleaning process, the Blaze-Shield broke off in chunks and also generated dust. Claimant testified that at the end of each work day, she was covered with Blaze-Shield dust. She developed a rash on the areas of her skin which the dust touched. Despite the cleaning process, a residue of Blaze-Shield was left on the beams. Claimant testified that during the welding process, the residue produced smoke and fumes which were worse than in other welding situations.
Claimant first noticed breathing problems in July 1985, a month after she started working at the Kings Bay job site. She began to feel generally unwell, and developed a cough, an elevated temperature, and upper respiratory infections which stayed with her the entire time she worked at Kings Bay. At that point, claimant did not associate her health problems with exposure to the Blaze-Shield dust. Claimant's health problems worsened, and ultimately she contracted an upper respiratory infection which lasted for the duration of her employment with Southeast Erectors at the Kings Bay job site.
Claimant left Southeast Erectors in October 1985. During the ensuing period when she worked for other employers, her health improved slightly. Upon her return to Southeast Erectors in April 1986, claimant's health deteriorated. In May 1986, her employment was terminated due to low production. Claimant's testimony reflects that she was physically unable to do her job, due to breathing problems, weakness, and the fact that she tired easily. Claimant worked for another construction company from October 22 to 25, 1986, when her employment was terminated for lack of productivity. The record reflects that during her employment with Southeast Erectors, claimant smoked one and a half packs of cigarettes a day, and had done so for the preceding twenty-five years.
Mr. Newton, a chemist, was accepted as an expert in the area of identification of compounds and of changes in compounds, based on the application of heat or welding. Mr. Newton's analysis of Blaze-Shield indicated that the material consisted of mineral wool and glass wool constituents bound up in a calcium silicate base. Glass wool is a pure free silica, which can become air borne and breathed in, i.e., it can become "respirable." Silica is respirable when it falls into a five-micron particle or less. Mr. Newton testified that calcium silicate, which is the bonder surrounding the rock wool fiber, could be reduced into the five-micron and less category through manipulation, thereby rendering it respirable. He further stated that the rock wool or quartz glass fiber found in the sample he analyzed will occur as a long fiber greater than five microns in length and less than a micron in diameter, but under manipulation, the rock wool also can be broken into pieces smaller than five microns. Mr. Newton explained that his findings were based on the tests he conducted on a sample of Blaze-Shield, and that any determination of respirable silica actually discharged into the air at the job site would require testing of air samples *948 taken at the job site while the work was in progress.
Ultimately, claimant came under the care of Dr. Sharpe, a pulmonary specialist. During Dr. Sharpe's treatment, additional pulmonary function studies were performed and x-rays were taken. Dr. Sharpe diagnosed claimant's condition as an intermediate case of acute silicosis. She distinguished claimant's condition from ordinary or chronic silicosis which develops over a ten to thirty year period, explaining that some people, claimant included, have an idiosyncratic response to inhalation of small particle silica. According to Dr. Sharpe, such persons either die within a short period of time after exposure, or develop a severe fibrosis very rapidly. Dr. Sharpe said her diagnosis of claimant's condition was based on (1) the temporal relationship between claimant's exposure to the product containing silica and the onset of disease, (2) the pulmonary function studies, and (3) claimant's clinical picture. The doctor determined the silica component of Blaze-Shield by reference to a Material Safety Data Sheet which in turn referenced a document known as CAS Number XXXXX-XX-X, containing a listing of the components of Blaze-Shield. Dr. Sharpe described Blaze-Shield as an attempt to make a safe asbestos.
The medical testimony in this case established that claimant's lung problems are restrictive in nature. A restrictive pattern is associated with disease silicosis, as opposed to the obstructive pattern usually associated with cigarette smoking. Three pulmonary specialists, Drs. Sharpe, Schoonover, and Jackler, determined that the claimant's pulmonary problem was primarily restrictive in nature. Dr. Schoonover recognized that claimant's condition was consistent with silicosis, but on the basis of the existing data, he could not state with certainty that claimant has silicosis. In a similar vein, Dr. Jackler determined that claimant's pulmonary function tests are inconsistent with test results attributable solely to cigarette smoking. He declined to diagnose claimant's condition as acute silicosis, because he did not think one episode of massive exposure would sustain the type of fibrotic reaction claimant manifested.
Dr. Anderson, who testified on behalf of employer/carrier, reviewed the medical reports, tests, and Dr. Sharpe's deposition, but did not examine claimant. Dr. Anderson found no evidence of silicosis in claimant's chest x-ray.[1] He opined unequivocally that claimant does not have silicosis.
With regard to the causation issue, it is fundamental that a workers' compensation claimant must establish that the injury for which recovery is sought is related to the employment, Gadsden County Board of Public Instruction v. Dickson, 191 So.2d 562, 565 (Fla. 1966); Metric Constructors, Inc. v. Chiles, 429 So.2d 1292, 1293 (Fla. 1st DCA 1983), and when the injury at issue involves disease or physical defect, evidence of causation must be shown by something more than that it is merely logical that the injury arose out of the claimant's employment. Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561, 562 (Fla. 1960). That is, causal relationship must be shown by clear evidence rather than speculation or conjecture. Id.; Norman v. Morrison Food Services, 245 So.2d 234, 236 (Fla. 1971); Gadsden County Board of Public Instruction v. Dickson, 191 So.2d at 564-565; Martin Marietta Corp. v. Glumb, 523 So.2d 1190, 1193 (Fla. 1st DCA 1988); Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902 (Fla. 1st DCA 1981).
This is not to say that causal relationship requires absolute proof, to the exclusion of reasonable inferences. For example, in Meehan v. Crowder, 158 Fla. 361, 28 So.2d 435 (1946), the court rejected the employer/carrier's contention that causation in that case was based on conjecture, noting that "[c]onjecture may be said to be a supposition without a premise of fact." 28 So.2d at 437. The supreme court found *949 that the compensation award in Crowder rested upon an inference of liability which was sustained by the premise of facts to be found, i.e., that claimant was well immediately preceding August 9, 10, and 11, and was sick soon after. During those three days, he was exposed to a highly dangerous solution which would cause the kind of illness which he developed. The court concluded that "[t]he evidence show[ed] a natural sequence of events based on facts from which liability can be inferred." Id.
To establish a causal relationship between work and injury under an exposure theory, a claimant must demonstrate that:
(1) he or she has had a prolonged exposure,
(2) a causal relationship between the exposure and the injury or aggravation, and
(3) he or she has been subject to a hazard greater than that to which the general public is exposed.
Martin Marietta Corp. v. Glumb, 523 So.2d at 1193. See also Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902 (Fla. 1st DCA 1981); Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA), pet. for review denied, 388 So.2d 1119 (Fla. 1980).
In the instant case, the judge determined that claimant failed to prove a causal relationship between her pulmonary condition and her employment based on two conclusions. First, the judge found that because Mr. Newton did not test the Blaze-Shield material by the application of heat or other manipulation, his testimony was insufficient to show that claimant respired free silicas or any other material that caused her present pulmonary condition. In addition, the judge expressed some doubt concerning the chemical components of Blaze-Shield. Second, the judge rejected Dr. Sharpe's opinion that claimant has developed acute silicosis, because he determined that Dr. Sharpe's opinion was based on an unwarranted assumption that claimant respired free silicas.
The record reflects that Mr. Newton determined the chemical properties of Blaze-Shield by analysis with polarized light microscopy. This analysis indicated that the product consists of mineral wool and glass wool bound up in a calcium silicate base. Mr. Newton testified that glass wool is a pure free silica which can become air borne and is respirable when it falls into a five-micron particle or less. Mr. Newton's testimony reflects that both the calcium silicate bonder surrounding the rock wool fiber and the rock wool fiber itself could be ground into the five micron or less category. He stated that his testimony in this regard was based on the sample provided to him for testing. Mr. Newton further stated that a determination whether respirable silica actually had been discharged into the air would require testing at the job site under the same conditions as when claimant worked with the Blaze-Shield.
The facts underlying the exposure theory in this case are similar to the facts in Lake v. Irwin Yacht & Marine. In Lake, the employee's breathing difficulties coincided with her employment at Irwin Yacht. Her duties caused her to be exposed to fumes from teak oil and acetone, and to fiberglass dust. The employee sought medical treatment, and then had to be hospitalized. Medical tests established that she was suffering from bronchitis, but did not establish the cause of the bronchitis. One doctor opined that her chemical exposure was the most likely cause of her bronchitis. Another doctor agreed, relying on claimant's history and the fact that she completely recovered after permanently leaving the employ of Irwin Yacht. A third doctor testified that the chemical the employee was exposed to would cause irritations to anyone subjected to the same level of exposure. On these facts, the court concluded that a causal connection had been shown between the disease and the employment. While the exposure in Lake occurred over a period of ten years, as opposed to the five to six month exposure in this case, the medical testimony in this case established that claimant had an idiosyncratic vulnerability to the material, which caused a dramatic response in less time than would have been the case for another person less sensitive to the product.
Although Mr. Newton's testimony does not establish with certainty that claimant's *950 manipulation of Blaze-Shield resulted in air borne particles of five microns or less, his testimony is sufficient to support a reasonable inference that such was the case, within the standard of proof contemplated in Meehan v. Crowder and Lake v. Irwin Yacht & Marine. This reasonable inference is supported by the premise of facts to be found, i.e., claimant was free of pulmonary difficulties prior to June 1985 when she first worked with Blaze-Shield, and was ill less than a month after exposure to the product. In addition, claimant's condition improved slightly between October 1985 and April 1986, when she worked for other employers, and worsened again between April and May 1986 when she returned to the Blaze-Shield work environment. Here, as in Meehan v. Crowder, claimant was exposed to a product which was capable of producing the type of illness which she subsequently developed. In other words, the record indicates the existence of "a natural sequence of events based on facts from which liability can be inferred." 28 So.2d at 437.
The judge's rejection of Dr. Sharpe's diagnosis was predicated on his view that the diagnosis was based on Dr. Sharpe's unjustifiable assumption that claimant was exposed to free silica. Dr. Sharpe did testify that based on the Material Data Safety Sheet, she determined that claimant had been exposed to quartz, which term Dr. Sharpe used synonomously with silica. In fact, the Material Data Safety Sheet corroborates Dr. Sharpe's conclusion that claimant was exposed to silica, and also corroborates Mr. Newton's testimony concerning the components of Blaze-Shield. Moreover, Dr. Sharpe's testimony reflects that her diagnosis was based on the temporal relationship [between work exposure and disease onset], exposure to a material that can cause the disease, the pulmonary function studies, and claimant's clinical picture.
Apparently there is no dispute that Blaze-Shield contains silica. Rather, the dispute concerns whether manipulation of Blaze-Shield will result in respirable particles. Mr. Newton testified that it would. Mr. Verhalen testified only that the product would break off in chunks, but admitted that the manufacturer had conducted no heat tests with regard to Blaze-Shield. He further admitted that he had never subjected the product to chipping with a hammer or to removal with a wire brush. The judge concluded that in order to show causation between her pulmonary condition and her employment, claimant was required to prove the actual existence of respirable free silica at the work site. We agree with the claimant that the judge's ruling in this regard imposes a higher standard of proof than required by applicable case law. For example, in Lake v. Irwin Yacht & Marine, in circumstances less conducive to certainty than those which obtain in this case, the court held the facts were sufficient to establish a causal connection between the claimant's condition and the employment.
This court's opinions in Lake v. Irwin Yacht & Marine and Martin Marietta Corp. v. Glumb establish that causation can be shown by medical opinion which is based on evidence of exposure, the claimant's history, and medical tests or studies showing that exposure to the material at issue can cause the medical problems manifested by the claimant. In the instant case, Dr. Sharpe was apprised that claimant had been exposed to a silica-laden product; claimant's history indicated she had not suffered from restrictive pulmonary problems prior to exposure to the product; and claimant's pulmonary function tests were consistent with exposure to silica. Such evidence goes beyond the level of speculation or conjecture as to causal connection described in Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561, 562 (Fla. 1960). Therefore, we disapprove the judge's finding that claimant failed to prove a causal connection between her pulmonary condition and her employment with Southeast Erectors.
Furthermore, the judge's finding that three pulmonary experts, Dr. Jackler, Dr. Schoonover, and Dr. Anderson, were of the opinion that claimant's problem is not silicosis is not supported by the record. The record reflects that of these three physicians, *951 only Dr. Anderson stated unequivocally that claimant does not suffer from silicosis. Dr. Jackler and Dr. Schoonover were unable to make a silicosis diagnosis with certainty, but by the same token, they did not rule out such diagnosis. Although Dr. Sharpe and Dr. Jackler employed different terminology, their testimony, when read in its entirety, is consistent in the sense that both concluded that claimant suffers from an acute intermediate or advanced chronic case of silicosis. Further, Dr. Schoonover's opinion is not contrary to the opinions expressed by Drs. Sharpe and Jackler. Although Dr. Schoonover declined to diagnose silicosis with certainty, he recognized that claimant's severe restrictive defect is consistent with silicosis. In a similar vein, Dr. Sharpe's testimony concerning the basis of her diagnosis was in accord with Dr. Schoonover's testimony that the basic diagnosis of silicosis is based on occupational exposure, symptoms, x-rays, and pulmonary function tests.[2]
We conclude that the judge's finding that claimant's condition is not compensable was based on an improper standard of proof. See, e.g., Meehan v. Crowder; Martin Marietta Corp. v. Glumb; Lake v. Irwin Yacht & Marine Corp.; Phillips v. Duval County School Board, 380 So.2d 1199, 1200 (Fla. 1st DCA 1980).
Accordingly, the order denying compensability is reversed and remanded with directions to reconsider the causation question with reference to the facts and reasoning set forth in Meehan v. Crowder and Lake v. Irwin Yacht & Marine. On remand, the judge of compensation claims is free to receive such further evidence as he deems necessary to decide the case.
SHIVERS, C.J., and MINER, J., concur.
NOTES
[1] According to Dr. Sharpe, an x-ray will not reveal the presence of acute silicosis. Rather, the diagnosis of acute silicosis is made primarily on the basis of pulmonary function studies and patient history. On the other hand, chronic silicosis, which develops over ten to thirty years, is manifested by x-ray shadows before the person affected is aware that the disease is present.
[2] The record reflects that claimant was rendered comatose for six days following an attempt to obtain a biopsy of her lung tissue. Claimant's reply brief states that subsequent to the final hearing, a lung biopsy was obtained which indicated the presence of silica deposits in claimant's pulmonary lymph nodes. Our decision in this case is not predicated upon this information which was not available to the judge of compensation claims. However, on remand, the judge is free to receive any additional evidence that would aid in deciding the contested issues.