578 So.2d 776 (1991)
GLASROCK HOME HEALTH CARE and Liberty Mutual Insurance Company, Appellants,
v.
Enrique LEIVA, Appellee.
No. 90-2028.
District Court of Appeal of Florida, First District.
April 11, 1991.
H. George Kagan of Miller, Kagan & Chait, P.A., Deerfield Beach, for appellants.
*777 Jeffrey S. Beslow of Ira J. Druckman, P.A., Miami, for appellee.
SMITH, Judge.
In this appeal of an order awarding workers' compensation, the employer and carrier (E/C) argue that the judge of compensation claims erred in finding the claimant suffered an occupational disease. We agree and reverse.
The appellee, claimant below, worked as a customer service representative for Glasrock Home Health Care, which supplies medical equipment to home-bound patients. Routinely, although not on a daily basis, the claimant would participate in the unloading and cleansing of used equipment stored on Glasrock trucks which had picked up the equipment the evening before. On May 5, 1988, the claimant left work early because of illness. By the next morning, he was severely ill and had been hospitalized. He was diagnosed as having fulminant meningococcemia, a virulent and often fatal form of meningitis, and was hospitalized for several months. The condition resulted in substantial vascular damage to the claimant's legs, and sadly, a bilateral amputation at the knee was required.
The claimant filed for various workers' compensation benefits which were controverted by the E/C. The matter proceeded to a hearing, at which the claimant submitted the testimony of Dr. Nathan Jacobson, M.D., claimant's treating physician. Dr. Jacobson testified that he believed claimant was infected by the bacteria causing the disease, neisseria meningitis, while cleaning the used medical equipment. More specifically, Jacobson thought the claimant was infected by aerosolization of fluid containing neisseria. Dr. Jacobson testified it was his belief that fluid, possibly sputum or saliva, was made airborne during the cleaning of suction bottles used in connection with respiratory machines. Neither Jacobson, nor anyone else for that matter, testified that any of Glasrock's customers suffered from a neisseria infection shortly before the claimant contracted the disease.[1]
Dr. Jacobson's testimony concerning the nature of the neisseria meningitis was consistent with the testimony of appellants' experts, Dr. Richard Greenman, M.D., and Dr. Thomas Hoffman, M.D., both of whom are also specialists in the treatment of infectious diseases. The bacterium cannot remain viable outside a human host, and is a rather Janus-faced organism, for while it can cause severe or fatal illness in some, most people are immune to its effects.
Appellants' experts rejected Dr. Jacobson's theory of infection by aerosolization of contaminated droplets, citing, among other things, the nature of the bacteria. Given the fact that at any given time numerous people are asymptomatic carriers of the bacteria, the E/C's experts opined that claimant was likely infected during the course of daily living.
Although claimant's argument before this court never specifically uses the term, it is clear that he is relying on a logical cause theory. Jacobson never performed tests on the equipment used by claimant nor was he aware that any testing had been done. He believed, but did not know as a fact, that the uncorking of suction bottles would aerosolize the fluids stored in the bottles. He did not testify as to any known case where the disease was transmitted through a similar aerosolization process. Dr. Jacobson testified:
I don't have a fact as to how he acquired his infection, but knowing what he does for a living, I think there's a risk there ... I think that my theory about aerosolization of respiratory secretion is my bias, but I believe it. I'm not making it up. I think in order to support that, you might get an expert in physics to talk to you about microdroplets and how much they weigh and what force it takes to aerosolize an air droplet that's eight microns in diameter, and could be stuck into the nose, and from that point, I could answer the question. I could tell *778 you that once it gets there, from literature, documents, people could either be colonized or get infected, but can this moist secretion aerosolize a droplet, it's my bias that it can. You may need a physics expert to give you better information.
In Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902, 904 (Fla. 1st DCA 1981), the following test was established for recovery for an occupational disease:
(1) the disease must be actually caused by employment conditions that are characteristic of and peculiar to a particular occupation;
(2) the disease must be actually contracted during employment in the particular occupation;
(3) the occupation must present a particular hazard of the disease occurring so as to distinguish that occupation from usual occupations, or the incidence of the disease must be higher in the occupation than in usual occupations; and
(4) if the disease is an ordinary disease of life, the incidence of such disease must be substantially higher in the particular occupation than in the general public.
See also, Smith v. Crane Cams, Inc., 418 So.2d 1266 (Fla. 1982).
With respect to the first prong, the evidence of causation must be shown by something more than a logical relationship. Harris v. Joseph's of Greater Miami, Inc., 122 So.2d 561 (Fla. 1960); Metric Constructors, Inc. v. Chiles, 429 So.2d 1292 (Fla. 1st DCA 1983). Further, the causal relationship must be shown by clear evidence rather than speculation and conjecture. Wiley v. Southeast Erectors, Inc., 573 So.2d 946 (Fla. 1st DCA 1991).
In this case, there is no question that the period in which the disease was contracted coincided with claimant's employment at Glasrock. However, the claimant's theory of causation is undermined by the fact that Dr. Jacobson's assumption regarding infection by aerosolization was based upon facts and inferences not supported by evidence of record. Arkin Construction Co. v. Simpkins, 99 So.2d 557, 561 (Fla. 1975). There was a total absence of evidence of the claimant's actual exposure to the substance causing the disease, the neisseria bacteria, while he was working within the scope and course of employment. Given this deficiency of proof, the claimant failed to show that the fulminant meningococcemia was actually caused by employment conditions that are characteristic of and peculiar to his occupation. See, § 440.151, F.S. (1989); Lake v. Irwin Yacht, supra.
The claimant also failed to prove the third prong of the Lake v. Irwin Yacht, supra, test, that is, that his occupation presented a particular hazard of the disease occurring so as to distinguish that occupation from usual occupations, or that the incidence of the disease was higher in his occupation than in usual occupations. 398 So.2d at 904.
None of the experts testified that the provision of medical equipment to home-bound patients presents a particular hazard of infection or that the incidence of the disease is higher among persons employed in positions similar to that of the claimant, nor was there any other evidence satisfying this requirement. Dr. Jacobson did note that a microbiologist working a laboratory in a Miami area hospital also suffered meningococcemia. Another expert reported that he had heard of three cases of neisseria infection in hospital workers. The claimant did not work in a hospital, and we are unwilling to assume based on the record before us that the claimant's employment closely approximated a hospital setting. The claimant failed, therefore, to satisfy prong three.
The claimant was also required to prove either that meningococcemia is not an "ordinary disease of life," or if it is an "ordinary disease of life," that the incidence of such disease is substantially higher in claimant's occupation than in other occupations. Lake v. Irwin Yacht, 398 So.2d at 904. The judge of compensation claims ruled that claimant's condition was not an ordinary disease of life. We do not find support for this conclusion.
*779 Section 440.151(2), Florida Statutes (1989), provides in pertinent part:
The term "occupational disease" shall be construed to... exclude all ordinary diseases of life to which the general public is exposed, unless the incidence of the disease is substantially higher in the particular trade, occupation, process or employment for the general public.
The wording of this provision indicates that a disease to which the general public is exposed is an ordinary disease of life.
In Florida State Hospital v. Potter, 391 So.2d 322 (Fla. 1st DCA 1981), this court held that tuberculosis is an ordinary communicable infectious disease to which the general public is exposed. Because there was no evidence that workers at the hospital where the claimant in Potter worked had a substantially higher rate of the disease than the general public, and because there was also no evidence that the claimant's tuberculosis was due to causes and conditions which were characteristic of and peculiar to the claimant's employment, this court reversed the award of benefits. It is important to recognize that this court did not hold in Potter that a claimant suffering from tuberculosis could never recover benefits for an occupational disease. The award of benefits was reversed because of a failure of proof.
The Florida Workers' Compensation Act does not consider the contraction of an occupational disease to be an "accident," though the statute provides that an occupational disease shall be treated as an injury by accident, provided certain conditions are met. § 440.151(1)(a), F.S. (1989). Under Florida law, an ordinary disease of life, that is, a disease to which the general public is exposed, may nevertheless be considered an occupational one vis-a-vis a particular type of employment when there is evidence that the incidence of the disease is substantially higher in that particular occupation than in the general public. Lake v. Irwin Yacht, 398 So.2d at 904. Thus, while Hepatitis B may be an occupational disease for a hospital laboratory technician, Wuesthoff Memorial Hospital v. Hurlbert, 548 So.2d 771 (Fla. 1st DCA 1989), it may not be an occupational disease for a person in another line of work. The issue of compensability is one of proof, and is not so much a question of definition. On this point, Larson's comments are useful:
Under general definitions of occupational disease in statutes granting compensation for such disease, . .. [t]he important boundary becomes now, not that separating occupational disease from accident, since compensability lies on both sides of that boundary, but the boundary separating occupational disease from diseases that are neither accidental nor occupational, but common to mankind and not distinctively associated with employment.
.....
If the employment is attended with unusual germs, poisons, chemicals, fumes, dusts, spores, or similar conditions, the problem of satisfying the distinction from the "ordinary" is not serious. Controverted or unsuccessful cases will usually be found to involve, not the definition, but a problem of proof: the question whether these employment conditions in fact produced this disability.
Larson, The Law of Workmen's Compensation, § 41.32, 41.33(a), citing, among others, Florida State Hospital v. Potter, supra, in § 41.33(a), n. 39.
The JCC found that at any one time fifteen to twenty percent of the general population is harboring a colony of neisseria, but are immune to its effects. According to the expert testimony, whether a person develops meningococcemia or meningitis after exposure to the bacteria appears to depend upon that person's immune system; meningococcemia appears to be the rarer manifestation of a neisseria infection. Nevertheless, we conclude that meningococcemia, as it is a form of neisseria infection, is an "ordinary disease of life" as that term is used in the statute given the rate of exposure of the general population to neisseria bacteria. In fact, claimant's own expert, Dr. Jacobson, testified that neisseria meningitis infection is an ordinary disease of life.
As noted, the claimant's expert, Dr. Jacobson, did not mention that any other *780 medical equipment supplier had contracted a neisseria infection. He observed that outbreaks of the neisseria infection are associated with the close-quartering of people, but he never testified specifically that employees in the claimant's line of work had a higher rate of neisseria infection than is suffered by the public generally. Furthermore, we note that the testimony of the E/C's expert's also did not provide proof of a substantially higher rate of neisseria infection among persons handling medical equipment that is suffered by the general public. Thus, claimant failed to satisfy prong four of the Lake v. Irwin Yacht test.
As noted earlier, the claimant in the instant case failed to satisfy prong one and three of the Irwin Yacht test. He also failed to prove prong four, that persons in his line of work have a substantially higher rate of this ordinary disease of life. Hence, he failed to prove the existence of an occupational disease, and we have no choice but to reverse the order of compensation.
REVERSED.
BOOTH and WIGGINTON, JJ., concur.
NOTES
[1] All of the experts agreed that meningococcemia has a short incubation period of several days.