KAHN, Judge.
Appellants, the employer/carrier (E/C), appeal from a workers’ compensation order awarding temporary partial disability benefits from April 24, 1987 to November 10, 1987 and wage loss benefits from November 11, 1987 to June 30, 1989. Appellants contend that the trial court erred in accepting the testimony of claimant’s unauthorized chiropractor over the medical reports of claimant’s orthopedic surgeon and erred in awarding temporary partial disability benefits, wage loss, and bad faith attorney fees. We remand the case for a further hearing on the issue of causation and, accordingly do not dispose of the other issues at this time. See Stephens Trucking Co. v. Bibbs, 569 So.2d 490 (Fla. 1st DCA 1990) (remanding for taking of further evidence on the issue of causation where there is no competent substantial evidence of causation in the record but doctor’s letter creates a doubt in claimant’s favor).
Claimant, a native of Haiti[1], was employed by Gator Industries in July 1986 as an operator of a machine that makes tennis shoes. He operated a machine which involved a form opening every eight seconds. On January 27, 1987 his left hand got stuck in the machine and was crushed. Claimant testified that when his hand was caught he fell down and the machine pulled him four or five feet. He spent eight days in the hospital. Orthopedist Steven Nadler performed surgery. Dr. Nadler’s report indicated that claimant had a displaced fracture of the middle and distal third of the ulna and a non-displaced fracture of the hamate. Claimant underwent an open reduction and internal fixation of the fracture. A plate and screws were put into his arm.
*1175 At the time of the accident, claimant was 29 years old and right-handed. When asked in deposition what part of his body was injured, he indicated that he injured his left arm. When asked if that was the only part of his body injured, he responded “Yeah.” At the hearing, however, he testified that he told Dr. Nadler that he also had back and neck pain and the doctor did not do anything about it.
Dr. Nadler released claimant to do light duty work as of February 18, 1987 and released him to return to his regular work on June 18,1987. The doctor’s office notes indicate that claimant had complaints of pain in the hand on February 17, 1987, pain in the forearm on March 31, 1987, and when last seen, on June 18, 1987, the employee had some pain with movement. His office note for June 18th states:
His x-rays look great. The fracture is healed. Clinically he has excellent range of motion with no neurovascular deficit.
I discharged him today. He certainly should be doing his regular work. I have told him that sometime in the future the plate should be removed.
Claimant admitted that he was advised by Dr. Nadler to return to work on February 17, 1987 and that he was advised by the E/C that he would have to do a work search. He testified, however, that the E/C never sent him wage loss forms.
Claimant returned to work, but after 30 minutes, found he could not do the work. He went to the office and was told to go home. He never asked the employer to send him to a doctor after he last saw Dr. Nadler. Instead, he later went to Central Medical Center of Carol City and was referred to chiropractor Daniel E. Roero.
Chiropractor Daniel E. Roero testified that he first examined claimant on July 29, 1987 for injuries resulting from an industrial accident which occurred on January 27, 1987. Claimant complained of neck pain, muscle spasm, hand pain, and hand weakness on the left side. Claimant also complained of “radiating arm pain from the neck, and discomfort, which interfered with his daily activities and sleeping.” He denied any other accidents. After testing and examining claimant, chiropractor Roe-ro found post-traumatic cervical dorsal strain/sprain, multiple trigger points, injury to wrist and post surgical repair of left wrist. Chiropractor Roero recommended that claimant be seen by other specialists and have additional tests taken; however, claimant could not get authorization. Roe-ro found that claimant reached MMI on November 11, 1987 with a 10% impairment of the body as a whole.
In the initial order dated November 13, 1990, the JCC accepted Dr. Roero’s testimony to the exclusion of all other testimony in conflict. The JCC denied the claim for the bills of Central Medical and Dr. Roero because neither was authorized by the employer. The judge went on to find that as a result of the fractured left ulna and hamate bones, claimant was disabled and his ability to earn had been affected. He found claimant was not supplied by the E/C with wage loss and job search forms and therefore was excused from a work search from the date of MMI through June 30, 1989. The JCC awarded temporary partial disability benefits from April 24, 1987 to November 10, 1987 based on the post-injury earnings. He further awarded wage loss benefits from November 11, 1987 through June 30, 1989 based on the post-injury earnings.
The E/C moved for rehearing, alleging inadequate findings of fact, as well as error in accepting the opinion of the chiropractor over the orthopedic surgeon without giving a valid reason. The judge entered a second order, on December 6, 1990 which stated:
The opinion of Dr. Roero is accepted over the opinions of the other physicians since his opinion is more consistent with the overall condition of the claimant as observed by me and his opinion is consistent with logic and reason.
As to the claimant’s ability to earn his pre-injury wage, the judge made the additional finding that “claimant has suffered neck pain, muscle spasms, hand pain and hand weakness as a result of the accident.”
*1176 The record is confusing as to the genesis of claimant’s neck and back injuries.[2] Nothing in Dr. Nadler’s medical records mentions any complaints of back or neck pain during the first five to six months following the accident. The only evidence of causation was chiropractor Roero’s testimony that claimant came to his office on July 29, 1987 for examination and treatment for injuries sustained in an industrial accident which occurred on January 27, 1987 and that claimant denied any other accidents. The chiropractor said nothing further about the industrial accident. The chiropractor’s records and testimony are devoid of any description of the accident or explanation as to how the accident caused the injury. Claimant relies on the logical cause doctrine to establish causation; however, this court has held that “the evidence of causation must be shown by something more than that it is merely logical that the injury arose out of employment.” Wiley v. Southeast Erectors, Inc., 573 So.2d 946, 948 (Fla. 1st DCA 1991), rev. denied, 582 So.2d 623 (Fla. May 5, 1991). In Glasrock Home Health Care v. Leiva, 578 So.2d 776, 778 (Fla. 1st DCA 1991), this court likewise held evidence of causation must be shown by something more than a logical relationship. Causal relationship must be established by clear evidence rather than speculation. Id. That does not mean, however, that absolute proof is needed to the exclusion of reasonable inferences. Wiley. Nevertheless, opinions of medical experts alone do not eliminate the necessity of proving the foundation facts necessary to support causation.
In the instant case, the chiropractor did not describe the industrial accident or discuss how it caused claimant’s injury. Neither is there any testimony as to when claimant began experiencing back and neck pain or when he allegedly reported the pain to Dr. Nadler. Nothing in Dr. Nadler’s records mentions any complaints of back or neck pain.
As in Stephens Trucking Co. v. Bibbs, supra, which remanded the cause for taking of further evidence on the issue of causation where there was no competent substantial evidence of causation in the record but a doctor’s letter created a doubt in claimant’s favor, the instant case presents facts which create at least a doubt in favor of the claimant. Claimant suffered an industrial accident in which his forearm was caught in the machine he was operating. After catching the arm, the machine suddenly jerked claimant four or five feet, crushed his arm and caused him to fall. Although claimant, who appears to have some difficulty speaking and understanding English, testified at deposition that his left arm was the only part of his body injured, he testified (through an interpreter) at the hearing that “I went to Dr. Nadler I explained to him about my neck, my back, everything else, but he didn’t want to help me.” Claimant also testified that he has had no other accidents since the industrial accident in 1987. Based on claimant’s description of the accident, his testimony regarding his arm, neck and back injury, and Dr. Roero’s testimony that claimant had a 10% impairment as a result of the industrial accident, there is some evidence creating a doubt in favor of claimant despite the absence of competent substantial evidence on the issue of causation. We cannot help but note the apparent difficulty, brought on by the language barrier, in claimant’s ability to adequately relate a history to his doctor. In determining cau *1177-1179 sation, a matter generally of far more import to courts than to physicians, an accurate history is of great value.
Although the record lacks an adequate factual foundation to establish causation, the evidence more than creates a doubt in favor of the claimant. We remand the JCC’s order with instructions to take further evidence on the issue of causation.
SMITH and WIGGINTON, JJ., concur.

. Claimant testified at the hearing with the aid of an interpreter; however, his deposition testimony was without the aid of an interpreter.

. The JCC appeared to have good reasons for accepting chiropractor Roero’s testimony over Dr. Nadler's medical records based on the fact that chiropractor Roero saw claimant during the period in question and saw him on more occasions than Dr. Nadler. The record establishes that once Dr. Nadler released claimant to work and claimant unsuccessfully attempted to go back to work, Dr. Nadler never examined claimant again. Moreover, Dr. Nadler did not testify live and only a few pages of medical notes and medical reports were offered into evidence. The JCC also had the opportunity to observe claimant and his chiropractor and to evaluate their credibility. From his observations, the JCC found chiropractor Roero’s opinions better described what he viewed to be claimant’s condition. However, despite the good reasons for accepting chiropractor Roero over Dr. Nadler, Roero’s testimony did not constitute competent substantial evidence that claimant’s muscle spasms and back and neck injuries were caused by the industrial accident.