SHIVERS, Senior Judge.
Appellant, Florida Mining and Materials, seeks review of a workers’ compensation order finding the claimant sustained a compen-sable injury under both the exposure and occupational disease theories of entitlement. We reverse and remand.
Claimant, James F. Minchey, was employed as a truck driver and loader with Florida Mining and Materials, a manufacturer of ready mix concrete and concrete blocks, from 1984 through July 1989. As a truck driver, claimant and other workers came into direct contact with cement dust, and had dust accumulate on their skin and clothing. In November 1990 and January 1992, Min-ehey filed claims seeking provision of medical treatment for contact dermatitis brought on by concrete sensitivity, as well as attorney’s fees and costs.
At the December 1992 hearing, Dr. Walter Graham testified by way of deposition that he first saw the claimant on referral from Dr. Mack Harrell. While Dr. Harrell did not testify at the hearing, Dr. Graham referred to Harrell’s notes and records in his deposition. Specifically, Dr. Graham testified that Dr. Harrell’s August 26, 1986 diagnosis of claimant was contact dermatitis, due to cement, on his left hand and wrist. Claimant apparently saw Dr. Harrell again in January of 1988, complaining of other, unrelated, symptoms. No mention was made by Dr. Graham of whether Dr. Harrell treated claimant for his skin condition or made a diagnosis of it at that time.
In late January, 1988, claimant was referred by Dr. Harrell to Dr. Graham. At that time, claimant gave Graham a history indicating a chronically recurring rash on his hands, lasting several years. He also indicated that his work conditions caused him to come into contact with cement dust. Graham’s examination of the claimant indicated red eruptions on his hands, and Graham “felt the possibility of a contact reaction was a strong possibility from his exposure to cement, possibly suggesting chromate sensitivity as part of the cement problem.” Claimant was treated with a steroid ointment and antibiotics and was scheduled to return in February 1988. Claimant, in fact, did not return until June of 1989, at which time Graham noted a pink scaly eruption on his hands, forearm, and neck. A culture for fungus was positive, and claimant was placed on an oral fungus medication. Graham indicated in his notes at that time that he “could not be certain if the entire problem, that is, the rash, was due to the fungus,” and felt that another evaluation in three to four weeks “might be necessary with patch testing in view of his previous exposure to cement.” Claimant was seen again in July of 1989, at which time his condition was “much improved.” Patch, or allergy, testing was scheduled for July 11, 1989, but claimant did not show up for his appointment and the patch testing was never performed.
Dr. Graham testified on cross-examination that he could not be certain whether the claimant had a sensitivity to chromate, a common allergen found in cement, without performing the patch test. He noted, however, that there are several other types of rashes or irritations (contact dermatitis) which people can get from cement. Determining whether the claimant had contact dermatitis from exposure to cement, according to Graham, would be a “clinical diagnosis” *1204 based on knowledge of the claimant’s exposure. Graham stated that, in 1988, he “felt [that] might be the problem” but, since he did not see the claimant for more than a year between 1988 and 1989, Graham “never really established whether indeed it was due to cement or not.”
Graham testified on recross examination that, based on claimant’s stated history of an exposure to cement dust, his “working diagnosis” was that the claimant “was having a problem with cement. Whether it was just a primary irritant or an allergic [sic], that was the question.”
In his final order, the judge of compensation claims (JCC) found that the claimant’s testimony regarding exposure to cement dust during employment was unrefuted, that the condition of exposure to cement dust was a condition characteristic of and peculiar to the employee’s particular occupation, and that claimant’s skin condition was contracted during his employment at Florida Mining. Claimant was found to have suffered from a compensable skin condition (contact dermatitis) based on both the exposure and occupational disease theories of compensation.
The only issue raised by the employer on appeal is whether the claimant sufficiently established the causal relationship between employment and injury required under both the occupational disease and exposure theories. See Martin Marietta Corp. v. Glumb, 523 So.2d 1190 (Fla. 1st DCA 1988); Glasrock Home Health Care v. Leiva, 578 So.2d 776 (Fla. 1st DCA 1991). In particular, the appellant argues that the finding of compens-ability should be reversed as Dr. Graham’s testimony did not establish “clear evidence rather than speculation or conjecture” of the required causal connection. Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561, 562 (Fla.1960). We agree that Dr. Graham’s deposition testimony did not provide clear evidence of the causal connection between the claimant’s exposure to cement and his medical problems since, although exposure to cement was Graham’s “working diagnosis” of the cause of claimant’s problems, he did not arrive at a final diagnosis. We therefore reverse the finding of compensability, but remand to the JCC to permit Dr. Graham to be questioned further regarding the issue of causation, and to clarify his opinion.
REVERSED and REMANDED for further consistent proceedings.
MINER and WEBSTER, JJ., concur.