407 So.2d 603 (1981)
Juan CARBALLO, Appellant,
v.
WARREN MANUFACTURING CO. and Cosmopolitan Mutual Insurance Co., Appellees.
No. VV-470.
District Court of Appeal of Florida, First District.
October 14, 1981.
Rehearing Denied January 6, 1982.
*604 David H. Levine, Miami, for appellant.
Steven P. Kronenberg, Miami, for appellees.
*605 JOANOS, Judge.
In this workers' compensation appeal, the claimant challenges the deputy's order in numerous respects. We have determined that three of the seven points raised on appeal are worthy of discussion. As to the deputy's finding on permanent partial disability, we reverse and remand for clarification. In addition, we vacate the offset of social security benefits and remand the order for an award of interest. We find no error in the deputy's order regarding the remaining points raised by claimant.
A victim of polio at an early age, claimant was paralyzed from the waist down but able to walk with the aid of crutches. While working for Warren Manufacturing Company as an assembler, on February 28, 1979, claimant fell and injured his right knee and lower back. The medical evidence concerning these injuries consisted of the medical reports of two physicians who saw no objective evidence of injury to either the knee or back and the live testimony of another physician, Dr. Turke. Dr. Turke treated claimant from April 2, 1979 to February 29, 1980; during this period of time, Dr. Turke was of the opinion that claimant was unable to work. Dr. Turke felt that claimant's back injury resulted in a 10%-15% permanent partial disability ("PPD") of the body as a whole. Of this 10%-15% rating, the doctor stated that 5%-10% was due to the aggravation of a pre-existing scoliosis condition. Dr. Turke also testified that the knee injury resulted in an additional 20-25% PPD of the leg, or 10% PPD of the body as a whole. Thus, the doctor concluded that claimant was 20%-25% PPD of the body as a whole due to injuries suffered as a result of his fall.
In his order, the deputy commissioner relied on Dr. Turke's testimony in finding the MMI date to be February 29, 1980. The deputy recited Dr. Turke's testimony as follows:
Dr. Turke felt the claimant would sustain a 60-65% permanent partial disability of the body, with 40% of that rating attributable to the claimant's pre-existing polio condition, and 20% due to the claimant's compensable accident. Dr. Turke also stated that 5% of the anatomic rating would be attributable to the claimant's preexisting spondylolysis condition. Thus, Dr. Turke felt that the compensable accident caused only a 5-10% permanent partial disability of the body.
The deputy then concluded that claimant's accident resulted in a 10% PPD of the body as a whole.
Recognizing the deputy's discretion in interpreting medical evidence, we are nevertheless concerned that the deputy has relied upon a misinterpretation of Dr. Turke's testimony in reaching his decision.
It is true that Dr. Turke attributed 20% PPD to the accident, as is stated in the order. The order also states, however, that Dr. Turke felt that the accident caused only a 5-10% PPD because 5% PPD was due to a pre-existing back condition. This last statement obviously conflicts with the first. In fact, the doctor's testimony was very clear; the accident caused 20%-25% PPD  10% due to the knee injury, 5%-10% due to an aggravation of a pre-existing back condition, and 10%-15% due to a low back sprain. The order's failure to classify the doctor's rating given for scoliosis as an aggravation of that condition as well as the failure to mention the doctor's rating of the knee injury makes us uncertain as to the basis for the deputy's determination on PPD. If the deputy found Dr. Turke to be a credible witness and intended to rely wholly on his findings, then injustice would result if the order was based upon a misunderstanding of those findings. Since it is not clear to us that the misinterpretation did not play some part in the ultimate outcome, we remand this issue for reconsideration.
At the hearing on the claim, the employer sought an offset of social security benefits as provided by § 440.15(10), Florida Statutes (1979). That section specifically provides for an offset of social security benefits received under 42 U.S.C. §§ 402 and 423, but does not provide for an offset of supplemental income received under 42 U.S.C. § 1381, et seq. (supplemental security *606 income for persons who are over 65, blind or disabled). The record does not clearly indicate which type of benefits claimant received. There is evidence, however, that claimant began receiving benefits within four or five months of his accident, which would be inconsistent with the disability provisions of 42 U.S.C. § 423 (c)(2). (Section 402, which deals with old age benefits, does not apply in this case.)
The employer, not the claimant, has the responsibility of informing itself of the social security payments received by the claimant, State of Florida, Department of Transportation v. Lindsey, 383 So.2d 956 (Fla. 1st DCA 1980), so it logically follows that the employer has the burden of proving that it is entitled to an offset. In this case, the employer did not offer any evidence that the benefits received by the claimant were of a type provided for in § 440.15(10). Since there is some indication that payments were made under 42 U.S.C. § 1381, no offset should be allowed.
Finally, the claimant argued without rebuttal by the employer that the deputy erred by not awarding interest. We agree. Section 440.20(9) requires an award of 12% interest on all past-due payments of compensation. When the permanent partial disability award is reconsidered on remand, the deputy should also award interest on the ultimate compensation benefits ordered.
The order is reversed and remanded for reconsideration of permanent partial disability benefits and for an award of interest. The portion of the order allowing an offset of social security benefits is vacated. The order is affirmed as to all other points raised by claimant.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.

ON PETITION FOR REHEARING AND CLARIFICATION
JOANOS, Judge.
Both parties have requested that we clarify several portions of our original order, including the scope of the remand for redetermination of permanent partial disability. We grant clarification only to the extent set forth in this opinion. In all other respects, the motions of the parties for rehearing or clarification are denied.
Claimant is uncertain whether or not a remand would allow the deputy to reconsider wage earning capacity loss as well as the permanent physical impairment rating. As the E/C points out, however, the deputy's denial of any wage earning capacity loss was affirmed in our order; therefore, the remand is limited to a redetermination of claimant's anatomical disability rating.
The E/C has also requested clarification as to whether our denial of an offset for Social Security benefits under § 440.15(10) precludes the E/C from introducing evidence to show the type of benefits claimant is receiving. Our opinion does not prevent the E/C from making such a showing; we merely stated that the E/C had not proven its entitlement to an offset as of the hearing date. We note, however, that the E/C cannot receive reimbursement for past payments of Social Security benefits because of its failure to inform itself whether or not those benefits were capable of being offset under § 440.15(10)(a).
Under § 440.15(10)(c), the employee is required to authorize the Social Security Administration to release disability information to the division, the employer, or the carrier upon demand. In this case, there was no indication that a demand was ever made for the employee to produce the information and the employer failed to introduce any evidence which would show that it was entitled to the offset. As stated in Department of Transportation v. Lindsey, 383 So.2d 956 (Fla. 1st DCA 1980) (cited in our opinion), it is the employer's or carrier's responsibility to inform itself of Social Security payments and, consistent with other sections of the Worker's Compensation Act, § 440.15(10) requires the employer to take the initiative in determining compensation benefits properly payable. We agree with the analysis in Lindsey:

*607 We see no reason to depart from this statutory model in this case of employer neglect of its own interests, and we conclude that a judge of industrial claims should not undertake, by an order acting as a money judgment against the claimant, or as a lien on a fund in his hands, or as a set-off against other compensation benefits past due the claimant, or as a reduction of contemporary and future compensation benefits, to recoup for the employer and carrier compensation payments which might and should have been reduced in the past but were not.
See also Florida Power & Light Co. v. Adkins, 377 So.2d 57 (Fla. 1st DCA 1979).
With regard to our finding that interest should have been awarded, the E/C has informed this Court that the carrier at risk, Cosmopolitan Mutual Insurance Company, has gone into liquidation and its successor, Florida Insurance Guaranty Association ["FIGA"], cannot be held liable for either penalties or interest. § 631.57(1)(b), Florida Statutes (1979). Although FIGA may not be held responsible for interest on compensation benefits payable prior to the entry of final judgment, FIGA must still pay lawful interest on amounts not paid after final judgment was entered. Florida Insurance Guaranty Association v. Gustinger, 390 So.2d 420 (Fla. 3d DCA 1980). For any interest which FIGA is not required to pay, the employer must bear the responsibility. See § 440.20(7), Florida Statutes (1978), which states that interest may be assessed against either the employer or carrier.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.