592 So.2d 1167 (1992)
Delaine FRITZ, Appellant,
v.
COURTYARD BY MARRIOTT and Marriott Casualty Claims, Appellees.
No. 91-530.
District Court of Appeal of Florida, First District.
January 14, 1992.
*1168 Edward G. Matheson of Bello & Matheson, Vero Beach, for appellant.
Mathew Staver of Staver & Associates, Orlando, for appellee.
ERVIN, Judge.
In this workers' compensation case, claimant, Delaine Fritz, appeals from an order denying compensability and all requested benefits. She contends that the judge of compensation claims (JCC) erred in rejecting her testimony regarding the time required to perform each job duty based on an erroneous interpretation of her testimony, and in concluding that her job duties did not require any lateral wrist movement and therefore did not cause her wrist and hand injuries. Additionally, claimant contends that the final order, which was entered after the 30-day period prescribed in Section 440.25(3)(d), Florida Statutes (1989), was stale, and that the JCC erred in denying her claim for costs, penalties, interest, and attorney's fees. As discussed below, we reverse as to the first two issues and remand for further proceedings, and therefore do not reach the remaining two issues.
Claimant worked as a night auditor at the Melbourne Marriott for the employer. She filed a claim for benefits in connection with a wrist and hand condition known as tenosynovitis (swelling and inflammation around the tendons) and possible carpal tunnel syndrome that she alleged was caused by repetitive exposure or occurrence at work. The employer/carrier (E/C) controverted the claim, asserting the conditions were noncompensable and did not arise out of her employment. The JCC agreed with the E/C and entered an order denying benefits. In so doing, the JCC accepted evidence that was clearly conflicting as uncontradicted, without explanation, and made several material findings that are not supported by the evidence.
Claimant's first two issues relate to whether the JCC erred in rejecting her testimony and by finding that her work activities did not cause her condition. As to those issues, it is well-established that it is the JCC's duty to judge the credibility of the witnesses and to resolve conflicts in the evidence, and that this court is bound by the JCC's findings if they are supported by competent, substantial evidence (CSE), i.e., evidence that is logical and reasonable. Carson v. Gaineswood Condominiums, 532 So.2d 28, 31 (Fla. 1st DCA 1988); Gadsden County Bd. of Pub. Instruction v. Dickson, 191 So.2d 562, 565 (Fla. 1966). If, however, the JCC's findings lack substantial support in the record, this court is not bound thereby. Chicken `N' Things v. Murray, 329 So.2d 302, 305 (Fla. 1976).
Turning first to the JCC's rejection of claimant's testimony as to her actual job duties, such testimony was rejected in part because the claimant had testified as to the maximum time required for each task based on the busy season at the hotel. Although the record does indicate that the hotel had an on and an off season, which caused the number of guests to fluctuate, the JCC's finding ignores critical testimony from Ms. Morgan, the woman who took over appellant's job, to the effect that even during the slow season she had work that would keep her occupied between six and six-and-one-half hours per night, and from Ms. Benton, claimant's supervisor, who testified the job entailed seven hours of work.
The JCC also rejected claimant's testimony on this point for the reason that it was contradictory in itself. He wrote: "If the *1169 Claimant's testimony were true, she would have to spend at least 16.6 hours doing check-ins and checkouts, and clearly her job only lasted from 11 p.m. to 7 a.m." In so saying, he specifically found that claimant testified she performed 50 or 60 check-ins or express check-ins or checkouts per night and that each check-in or checkout would take approximately 20 minutes per person. These findings lack support in the record. Claimant in fact testified that she performed between 50 and 60 express checkouts per night, which took her approximately one hour. As for check-ins, claimant testified that the check-in procedure for guests without reservations would take between 15 and 20 minutes. This included both the actual time spent by her with the guest during check-in, when she asked pertinent questions regarding the guest's name and address, the room desired, the method of payment, and the time required to assign a room, give the guest a key and directions to the room, enter pertinent information into the computer, and obtain credit card verification. Because it is apparent that the JCC relied in part on a misinterpretation of claimant's testimony, especially in light of critical testimony he overlooked, remand is necessary for reconsideration of the evidence. Carballo v. Warren Mfg. Co., 407 So.2d 603 (Fla. 1st DCA 1981), review denied, 415 So.2d 1362 (Fla. 1982). Cf. Crime Control, Inc. v. Burston, 522 So.2d 929 (Fla. 1st DCA 1988) (court declined to reverse order awarding benefits even though some findings were not supported by CSE, because erroneous findings were immaterial and unnecessary to the decision to award benefits).
Turning next to the JCC's determination that claimant's hand and wrist conditions were not caused by her employment, the JCC found that neither the job duty descriptions nor claimant's testimony indicated that she was required to perform lateral wrist movement. Although it is true that claimant did not specifically say she performed lateral wrist movements, she did describe in detail all of her job duties, which common experience indicates require some lateral wrist movement. More importantly, however, the JCC seems to have required that claimant prove she performed lateral wrist movement to establish causation based upon a finding that Dr. Ramirez testified that lateral movements were required for tenosynovitis. This, too, is a misinterpretation of the witness's testimony. In fact, Dr. Ramirez testified that people who have jobs requiring repetitive use of their hands most often develop tenosynovitis. While Dr. Ramirez did say that lateral movements were a textbook aggravation of the condition, he did not say tenosynovitis was caused only by repetitive lateral movements, as the JCC suggests. Thus, remand is necessary to allow the JCC to reconsider this issue in light of his reliance on the misinterpreted testimony. Carballo.
In determining that childbirth and lifting of the child were the more logical causes of claimant's condition, the JCC accepted testimony from Ms. Morgan and Mr. Yibirin, the front desk manager, to the effect that claimant informed them that her wrist pain began after she gave birth in July 1989 to her daughter, based upon claimant's statements to them that her hands had been strapped down during delivery. In so doing, the JCC noted that such testimony was uncontradicted. This is simply not correct. Claimant clearly denied that the delivery caused her problem. Moreover, the JCC completely ignored Ms. Benton's testimony that she observed claimant rubbing her hands and wrists and heard her complain of wrist pain prior to the birth. Although it is the JCC's function to determine the credibility of the witnesses and resolve conflicts in the evidence, this discretion is not unbridled. Curry v. Miami Dolphins, Ltd., 522 So.2d 1010, 1011 (Fla. 1st DCA 1988). The JCC must make such findings of ultimate fact as are sufficient to justify his or her decision. Id. Because the reason for accepting Ms. Morgan's and Mr. Yibirin's testimony is not supported, in that their testimony was contradicted, remand is necessary for clarification. Carballo.
On the causation element, the JCC accepted the testimony of Dr. Seig, *1170 who performed an IME, over that of the other doctors. Although the JCC is authorized to accept the testimony of one doctor over that of others, he must give reasons therefor that are supported by the record. Bray v. Elec. Door-Lift, Inc., 558 So.2d 43, 46 (Fla. 1st DCA 1989); Calleyro v. Mt. Sinai Hosp., 504 So.2d 1336, 1337 (Fla. 1st DCA), review denied, 513 So.2d 1062 (Fla. 1987). The reasons must logically support the JCC's decision; they may not be arbitrary or unreasonable. H & A Frank's Constr. v. Mendoza, 582 So.2d 780, 781 (Fla. 1st DCA 1991); Bray, 558 So.2d at 46. Here, Dr. Seig's testimony was based in part on his review of the 30-minute videotape prepared at the E/C's request, which depicted Ms. Morgan, claimant's replacement, performing the job in question. Dr. Seig was erroneously informed, however, that the video depicted all the work claimant had to do until 6:00 a.m., when she would run her final reports, which required minimal keyboarding. The video did not depict repetitive tasks, which is the very basis of this claim. Moreover, claimant, Ms. Benton, and Ms. Morgan all testified that there was sufficient work to be done to fill between six and seven hours per night, even in the slow season. Thus, Dr. Seig's opinion is not based on facts in the record. Furthermore, Dr. Seig was under the erroneous impression that claimant had a more severe problem with her left wrist, which is not supported in the record. Everyone  claimant and all her other doctors  testified that the problem was more severe in her right wrist. Because Dr. Seig's opinions are not based on evidence in the record, the JCC's acceptance of same is not sufficiently explained.
In so saying, we note that in rejecting the other doctors' testimony, the JCC made erroneous findings relating thereto. First, as to Dr. Mogle, he stated that claimant gave no other reason than her delivery as the precipitating event for her condition, and that Dr. Mogle testified that lifting a baby could precipitate the problem. Yet Dr. Mogle stated that he really did not know how soon after the delivery the pain started; that he really did not think the delivery had anything to do with her condition; and that picking up the child more likely was an exacerbating feature, although he "guessed" it could have precipitated the problem, which he admitted would be conjecture.
Next, the JCC rejected Dr. Ramirez's opinion because claimant did not tell him anything about her workplace until her second visit with him, which was after he had explained to her that the common cause of tenosynovitis was repetitive hand movements. Although it is true that claimant never attributed her wrist condition to her work activities until after Dr. Ramirez had told her of the common causes, the record disclosed that Ramirez obtained a history, including claimant's employment, on the initial visit. Thus, upon claimant supplying information about her job, Ramirez was able to diagnose her condition. The JCC's rejection of Ramirez's opinion, which was based on claimant's lateral movements required by her employment, is, as previously discussed, likewise not supported by the record. The JCC also rejected Ramirez's opinion because he was unsure as to the amount of time claimant actually used the keyboard and because he opined that lifting a child could produce tenosynovitis. Ramirez clearly testified, as did all the other doctors, that there is no set amount of time necessary before repetitive movements will cause development of tenosynovitis; thus even though he was unsure of the actual amount of time claimant spent on the keyboard, he was still of the opinion that her condition was work-related. Moreover, Ramirez testified that he had tested the causation element by removing claimant from her work environment, which resulted in dramatic improvement. This was true even though claimant continued to care for her child. Consequently, none of the JCC's reasons for rejecting Ramirez's opinions are supported by CSE.
As for the JCC's rejection of Dr. Hermansdorfer's opinion that claimant's condition was work-related, it is true that the doctor was unaware of claimant having her hands strapped down during delivery and that after having been given that information, *1171 he testified he could not say keyboarding was the cause of claimant's conditions. It should be noted, however, that Hermansdorfer did not state that the strapping and lifting the baby were the cause of claimant's condition, only that strapping wrists "could be something of significance to cause carpal tunnel" and that "repetitive lifting of a child could cause tenosynovitis."
Based upon the above unsupported findings and the unexplained contradictory evidence, we reverse as to the first two issues and remand for further proceedings. On remand, the JCC should reconsider his erroneous findings and the evidence he apparently overlooked. He may also take additional evidence if necessary in order to reach a proper decision on the causation issue.
REVERSED and REMANDED for further proceedings.
SHIVERS and WIGGINTON, JJ., concur.