793 So.2d 1081 (2001)
Michael JEFFERSON, Appellant,
v.
WAYNE DALTON CORPORATION/HARTFORD, Appellees.
No. 1D00-2608.
District Court of Appeal of Florida, First District.
August 10, 2001.
Rehearing Denied September 17, 2001.
*1082 Thomas J. Ueberschaer, Esquire of Millsap & Ueberschaer, Pensacola, for Appellant.
Douglas F. Miller, Esquire of Clark, Partington, Hart, Larry, Stackhouse & Bond, Pensacola, for Appellees.
PER CURIAM.
Michael Jefferson, claimant below, appeals an order of the judge of compensation claims denying him authorization both for medical care and for indemnity benefits from Wayne Dalton Corporation (Wayne Dalton) and ITT Hartford, Wayne Dalton's insurer. We affirm insofar as the order denies medical benefits, but remand for further proceedings as to indemnity benefits.
On August 19, 1997, Mr. Jefferson injured his lower back lifting a roll of banding material within the course and scope of his employment at Wayne Dalton. Informed of the injury, Wayne Dalton transferred him to light duty work, but did not initially authorize treatment. Mr. Jefferson sought treatment on his own at an emergency room on September 16, 1997, and a few weeks later with Dr. Richard Weaver, who stated that he could return to work with restrictions, but recommended a referral to a neurosurgeon. Later, Wayne Dalton authorized Dr. Weaver.
Dr. Weaver saw Mr. Jefferson again in December of 1998 and March of 1999 concerning his low back problem. Both times, Dr. Weaver kept him on work restrictions and recommended referral to a neurosurgeon. In May of 1999, Dr. Weaver referred him to Dr. David Fairleigh, an anesthesiologist, for pain management. After Mr. Jefferson later visited a neurosurgeon, who did not recommend surgery, Dr. Fairleigh recommended he obtain a second neurosurgeon's opinion.
In July of 1999, Mr. Jefferson underwent an independent medical evaluation with Dr. Steven Doheny, a psychiatrist. Dr. Doheny concluded he should have psychiatric intervention for at least six months to treat depression caused by his August 1997 accident, and that his psychiatric disorders made him unemployable.
Wayne Dalton terminated Mr. Jefferson on December 18, 1997, after a verbal altercation with his supervisor. He worked briefly for a temporary agency, and then for Coca-Cola Corporation beginning in late February 1998. On September 9, 1998, he reported an injury to his neck arising out of that employment. Coca-Cola put him on light duty work for several months before placing him on indefinite medical leave in December of 1998. Mr. Jefferson has been unemployed since January 1, 1999.
The judge of compensation claims denied the requests for psychiatric care and (a second) neurosurgeon's evaluation and (if necessary) treatment, all on grounds that Mr. Jefferson did not prove that he had exhausted the managed care grievance process. Mr. Jefferson had requested medical care, and did not request an independent medical examination for any other purpose. Cf. Kohout v. Benefit Adm'rs, 781 So.2d 1164, 1165 (Fla. 1st DCA 2001) (stating that the grant by the judge of compensation claims of claimant's motion *1083 for an independent medical examiner was justified where the employer offered absolutely no medical care); Claims Mgmt. v. Grenier, 777 So.2d 1039, 1040-41 (Fla. 1st DCA 2000) (clarifying that the dispute involved causation, and not the provision of medical treatment, care and attendance); Wiggins v. B & L Servs., 701 So.2d 570, 572 (Fla. 1st DCA 1997) (stating a judge of compensation claims can rule on a claimant's motion for an independent medical examiner when the examiner is sought to resolve a dispute regarding entitlements to indemnity benefits).
Absent an emergency, only a claimant who has exhausted all avenues a managed care organization's grievance procedures provide can be eligible for medical care from an outside provider. The authority of the judge of compensation claims is limited in this area because section 440.134 "clearly places the authorization and supervision of managed care arrangements within the authority of the Agency for Health Care Administration." Farhangi v. Dunkin Donuts, 728 So.2d 772, 773-74 (Fla. 1st DCA 1999). Acknowledging that managed care grievance procedures must be exhausted when managed care is provided, Mr. Jefferson argues that an employer or its insurance carrier must first prove that a managed care system was in place at the time of the work place injury in order to rely on the exhaustion requirement, citing Florida Distillers v. Rudd, 751 So.2d 754, 757 (Fla. 1st DCA 2000).
Beginning January 1, 1997, however, managed care arrangements became mandatory for every insurer. See § 440.134(2)(b), Fla. Stat. (1997). Appellant's reliance on Florida Distillers is misplaced because the industrial accident in that case occurred in 1995, at a time when managed care arrangements were optional. See Florida Distillers, 751 So.2d at 757. Because Mr. Jefferson was injured at work in 1997, after managed care arrangements were mandatory, appellee did not have to prove that a managed care arrangement was in place at the time of the injury in order to rely on the defense of failure to follow managed care policies. Although it is open to a claimant to prove otherwise, the presumption (since July 1, 1997), is that a managed care plan is in place. Mr. Jefferson did not prove otherwise.
The judge of compensation claims reached the merits of the claims for temporary partial and temporary total disability benefits, but denied the claims. Appellant argues that the denial of temporary disability benefits is not based upon competent substantial evidence. The judge of compensation claims found, in fact, that the testimony of appellant's psychiatrist, Dr. Doheny, "excuse[d] the claimant from work on July 15, 1999." Surprisingly, howevergiven that nearly two years intervened between the accident and the visit to Dr. Dohenythe judge of compensation claims interpreted the psychiatrist's testimony as referring to a single twenty-four hour period, and concluded that appellant was not eligible for indemnity benefits because he did not prove a disability lasting longer than seven days, as required by section 440.12(1), Florida Statutes (2000).
The standard of review in workers' compensation cases is whether there is competent substantial evidence to support the ruling of the judge of compensation claims. See, e.g., Cumberland Farms, Inc. v. Manning, 685 So.2d 64, 64 (Fla. 1st DCA 1996). Traditionally, however, a judge of compensation claims must make findings of fact that justify his decision. It is the function of the judge of compensation claims to determine the credibility of the witnesses and resolve conflicts in the evidence. See, e.g., Fritz v. Courtyard By Marriott, 592 So.2d 1167, 1168 (Fla. 1st DCA 1992). But this discretion is not *1084 without limitations. See id. A judge of compensation claims cannot, for example, reject unrefuted medical testimony without providing sufficient reason. See, e.g., Turner v. G. Pierce Wood Mem'l Hosp., 600 So.2d 1153, 1157 (Fla. 1st DCA 1992); Fritz, 592 So.2d at 1170.
Dr. Doheny testified both that Mr. Jefferson's back injury was the cause of his pain and depression, and that it "would make it impossible for him to work in any capacity." See South v. Heartland Employment & Training Admin., 527 So.2d 270, 271-72 (Fla. 1st DCA 1988) (reversing where judge of compensation claims failed to credit claimant's psychiatrist's testimony that he doubted whether claimant would ever return to a productive capacity if he did not receive psychiatric treatment). The findings of the judge of compensation claims fail to explain his rejection of this uncontroverted testimony. The judge of compensation claims did not question Mr. Jefferson's credibility. See Kessler v. Cmty. Blood Bank, 621 So.2d 539, 542 (Fla. 1st DCA 1993) (asserting that the judge of compensation claims failed to state his reason for accepting the testimony of one surgeon over another where the explanation was not apparent in the record). See also Stanifer v. Lynne Precast, Inc., 695 So.2d 786, 786 (Fla. 1st DCA 1997) (reversing and remanding where judge of compensation claims ignored critical testimony of a physician); H & A Frank's Constr. v. Mendoza, 582 So.2d 780, 781 (Fla. 1st DCA 1991) (stating that the reasons articulated did not support the judge of compensation claims' acceptance of a chiropractor's testimony over the testimony of the other doctors).
Other testimony made clear that the physical effects of the industrial accident (which contributed to the attendant mental problem) persisted for many months, not for a mere twenty-four hours. As the judge of compensation claims acknowledged, Dr. Fairleigh excused appellant from work between June 1999 and February 2000, and Dr. Weaver kept appellant on light duty status between May 1999 and January 2000. Thus, the finding that appellant was disabled for only twenty-four hours on July 15, 1999 conflicts with Dr. Weaver's statement that appellant's total complaints stemmed from the 1997 injury.[*]
Additionally, the judge of compensation claims misstates the record when he finds that "there is no dispute that the claimant has not worked nor looked for work after January 1, 1999." Mr. Jefferson testified that he did look for work after January 1, 1999. In any event, a job search is no longer a requirement for temporary partial disability benefits. A claimant need only prove a causal connection between injury and the loss of income. See Vencor Hosp. v. Ahles, 727 So.2d 968, 969 (Fla. 1st DCA 1998). Thus, even though appellant was fired for insubordination, he could still be entitled to benefits if he satisfies the burden of showing that the injury contributed to his wage loss after the termination. See Betancourt v. Sears Roebuck & Co., 693 So.2d 680, 684 (Fla. 1st DCA 1997) (en banc).
*1085 Because the order failed to articulate the reasons for rejecting the uncontroverted testimony of Dr. Doheny, we must reverse and remand with directions that the judge of compensation claims determine whether valid reasons exist for that rejection. See Turner v. Carl Blanchard Plastering, 590 So.2d 1025, 1026 (Fla. 1st DCA 1991); H & A Frank's Constr., 582 So.2d at 782. Accordingly, we remand for further proceedings on appellant's claim for indemnity benefits consistent with this opinion.
ERVIN, WEBSTER, and BENTON, JJ., concur.
NOTES
[*] The judge of compensation claims found that Dr. Fairleigh's statements on causation were "tainted" because he did not have a full history of appellant's previous back pains or Coca-Cola injury. See Food World # 150 v. Malone, 661 So.2d 364, 365 (Fla. 1st DCA 1995); Stacy v. Venice Isles Mobile Home Park, 635 So.2d 1039, 1040 (Fla. 1st DCA 1994). But the record is clear that both Dr. Doheny and Dr. Weaver knew of appellant's past back problems and his Coca-Cola accident, and Dr. Weaver testified that he, a Dr. Barangan and Dr. Fairleigh believed that appellant should be referred to a neurosurgeon. See S & A Plumbing v. Kimes, 756 So.2d 1037, 1040 (Fla. 1st DCA 2000) (stating that the testimony of a doctor was competent even though he was unaware that the claimant was being treated for a resolved injury which had occurred several years before the accident).