M.K. THOMAS, J.
In this workers’ compensation case, the Employer/Carrier (E/C) appeals an order of the Judge of Compensation Claims (JCC) rejecting multiple defenses to com-pensability of a work accident and related benefits. As to the E/C’s argument that the JCC erred in rejecting misrepresentation defenses, we agree and reverse. Accordingly, it is unnecessary to address the remaining issues on appeal.

I. Facts

On or about November 2, 2014, the Claimant was operating a front-end loader for the Employer. At a curve in the road, the brakes failed, and the Claimant jumped from the machine. Conflicting testimony exists as to whether the Claimant reported any injuries to the Employer. In August 2015, following termination by the Employer for reasons unrelated to the accident, the Claimant filed a Petition for Benefits (PFB) seeking payment of temporary total disability (TTD) or temporary partial disability (TPD) benefits, and authorization of a neurological/orthopedic physician to evaluate and treat his lower back symptoms.[1] He listed the November 2, 2014, work accident as the basis for the injuries. In October 2015, the Claimant filed an Amended PFB requesting determination of compensability of the November 2, 2014, accident. The PFBs, both signed and attested by the Claimant as to accuracy, described the accident as follows:
CL WAS DRIVING A FRONT END LOADER THAT WAS HAVING MECHANICAL ISSUES. AS HE APPROACHED A BEND IN THE ROAD GOING TO A BRIDGE, HE LET OFF THE ACCELERATOR AND THE MACHINE STALLED. HIS STEERING AND BRAKES WENT OUT. BEFORE THE MACHINE WENT OVER THE SIDE OF THE ROAD, HE JUMPED. HE HIT THE TIRE, WHICH PUSHED HIS FACE INTO THE PAVEMENT AND THEN THE REAR TIRE HIT HIM IN THE HEAD.
During his first deposition in May 2015, the Claimant testified the injuries resulting from the work accident included a broken nose, orbital fractures, concussion with brain injury, and herniated discs of the neck and lower back. He requested surgery for facial fractures and treatment for his neck and back. The Claimant described that when he jumped from the machine, he hit his left shoulder on the rear left tire, which spun him around causing him to strike his face on asphalt. He described injuries specifically to the right eye and socket, as well as bleeding scrapes over his left eye. Seven months later, in his second deposition, the Claimant gave sworn testimony that his injuries from the accident included the eye socket, nose, neck, middle and lower back. However, he advised that as of the second deposition, his nose and eye injuries had resolved. He complained of constant neck pain.
The Claimant did not seek immediate medical treatment, but rather waited one month after his termination (and two months after the November 2014 work accident) to see a doctor. Initial medical treatment was received on January 22, 2015, at Shands Hospital. The Claimant reported a head injury/pain with frustrated memory and headaches due to being hit in the head with a baseball bat “eight days *901 prior.” At his initial deposition, when confronted with the Shands records, the Claimant testified his description of the baseball bat incident was false and contrived. He asserted he later “corrected” this false account and told Shands’ staff the injuries actually occurred from an accident at work. He allegedly made the misrepresentation due to his belief he would not receive medical treatment if he reported a work-related accident. No “correction” was documented in the medical records.
On February 4, 2015, Claimant proceeded to the Wesley Chapel Hospital Emergency Room, where he was seen for left-sided facial pain, advising he received a facial fracture “one month earlier.” He requested pain medications and denied back pain or headaches. He did not report a work accident.
After the Claimant’s filing of a PFB in August 2015, the E/C scheduled an IME with Dr. Thomas Delgado, a neurosurgeon. The Claimant described to Dr. Delgado that he suffered injuries to his neck, face, and lower back as a result of the November 2, 2014, accident. The Claimant also completed patient intake/history forms at Dr. Delgado’s office. On the forms, the Claimant specifically denied any back pain, injuries, or sciatica before the work accident. The Claimant did not disclose to Dr. Delgado that he previously reported a “baseball bat” incident to Shands as the cause of his head and facial injuries. Dr. Delgado, after reviewing the Shands medical records (provided to him by the E/C), confronted the Claimant regarding his report of being struck in the head with a baseball bat. Per Dr. Delgado, the Claimant responded that he “wasn’t sure because he was kind of foggy when that happened.” At deposition, Dr. Delgado further testified that, contrary to the Claimant’s responses on the patient intake and history forms, medical records documented that the Claimant did, in fact, have a prior history of chronic back pain with treatment in 2006-2007, and lumbar and neck pain following an automobile accident in 1997.
The Claimant was evaluated by Dr. Robert Martinez, a neurologist, in March 2015. He complained of neck, middle and lower back pain, along with confusion as a result of the work accident. Likewise, the Claimant denied any history of neck or back pain, or similar injuries before the work accident. He did not disclose the earlier report of being struck in the head with a baseball bat.
The Claimant obtained an Independant Medical Exam from Dr. Jorge Inga, a neurosurgeon, on November 11, 2015. He complained of pain radiating down his right leg, lower back, cervical spine, shoulder and right facial pain. The Claimant described the origin of his symptoms as the November 2, 2014, work accident. He did not address the baseball bat incident.
In preparation for hearing, the E/C filed medical records in compliance with section 440.29(4), Florida Statutes. The admissible medical records documented the Claimant had a history of similar medical complaints and treatment prior to the work accident. The records documented: lower back injuries 1997 after an automobile accident; chronic back pain in 2006-2007; medical care and diagnostic studies in 2012 for constant neck pain only relieved by pain medications; injuries from a motorcycle accident, which required ongoing medical treatment for twelve years; and a previous recommendation for cervical surgery. In the pretrial stipulations, the Claimant listed the following physical conditions as related to the work accident: “face injuries, concussion w/ brain injury, back and neck.” However, at the final hearing, the Claimant announced he was seeking compensa-bility of the lower back injuries only, thus *902 dropping other claims relating to facial and neck injuries, and concussion with brain injury.
During cross-examination at the merits hearing, the Claimant was questioned regarding his prior deposition testimony in which he described substantial injuries to his face and head following the November 2, 2014, work accident. The Claimant admitted that his prior statement at Shands of being struck in the head and face by a baseball bat was “not true.” Although the JCC determined the Claimant had committed multiple misrepresentations, she ultimately declined to terminate the Claimant’s entitlement to workers’ compensation benefits. Specifically, -the JCC held the misrepresentations were moot and not committed for the “purpose of obtaining workers’ compensation benefits.” We disagree and reverse.

II. Analysis

While this Court’ is deferential to the broad fact-finding powers of a JCC, such power is not without constraints. Fritz v. Courtyard Marriott, 592 So.2d 1167, 1169 (Fla. 1st DCA 1992). A JCC’s findings must be in accordance with the requirements of chapter 440 and be supported by competent, substantial evidence (CSE). Quiroz v. Health Cent. Hosp., 929 So.2d 563, 565 (Fla. 1st DCA 2006).
A JCC’s factual findings will be upheld if any CSE supports the JCC’s decision, regardless of whether “other persuasive evidence, if accepted by the JCC, might have supported a contrary ruling.” Pinnacle Benefits, Inc. v. Alby, 913 So.2d 756, 757 (Fla. 1st DCA 2005) (emphasis in original). However, to the extent the issues raised on appeal concern statutory construction, a question of law is presented, and our review is de novo. Palm Beach Cty. Sch. Dist. v. Ferrer, 990 So.2d 13, 14 (Fla. 1st DCA 2008); Matrix Emp. Leasing v. Hernandez, 975 So.2d 1217, 1218 (Fla. 1st DCA 2008); Mylock v. Champion Int’l, 906 So.2d 363, 365 (Fla. 1st DCA 2005).
Sectioris 440.09(4) and 440.105, Florida Statutes, are often referred to as the mechanisms that created the “fraud defense.” This “misnomer appears to have narrowed the "application of the sanction beyond that intended by the legislature.” Village Apartments v. Hernandez, 856 So.2d 1140, 1141 (Fla. 1st DCA 2003). Not all prohibited acts in section 440.105 entail a “fraud” element. See § 440.105(4)(b)2.-3., Fla. Stat. In interpreting a statute, “full effect must be given to the language' selected by the' legislature.” Hernandez, 856 So.2d at 1141. Accordingly, per section 440.09(4), the commission of “any” act of an employee prohibited by section 440.105 results in forfeiture of benefits, not just those statutorily designated as “fraudulent.”[2]'This Court has previously emphasized that the 2003 Amendments to section 440.09(4)(a), adding the phrase “or any criminal act,” broadened the subsection to cover not only acts described in section 440.105, but also other criminal acts, as long as “all of those acts are done for the purpose of securing workers’ compensation benefits.” Matrix Emp. Leasing, 975 So.2d at 1219.
Determining whether there has been a violation of section 440.105(4)(b) requires a two-part inquiry: 1) a finding as to whether a false (or fraudulent or misleading) oral or written statement was made by the person; and 2) a finding as to whether, at the time the statement was made, it was made with the required in *903 tent. Arreola v. Admin, Concepts, 17 So.3d 792, 794 (Fla. 1st DCA 2009). It is not necessary that the misrepresentation be material in actuality. “Rather, the relevant inquiry is whether a claimant’s misrepresentation—a misrepresentation the claimant thought would have a material impact on his case—was made with the intent to secure benefits.” Id.; Village of N. Palm Beach v. McKale, 911 So.2d 1282 (Fla. 1st DCA 2005). Furthermore, the statements are not required to have been made under oath so long as the Claimant knew at the time that the statements were false. Hernandez, 856 So.2d at 1142.
As to the first prong, it is undisputed here that the Claimant provided multiple false and/or misleading written and oral statements. The JCC acknowledged this. When confronted at hearing, the Claimant conceded he misrepresented the etiology of his injuries when seeking initial medical care at Shands. Further misrepresentations were made by the Claimant at Wesley Chapel Hospital and relating to pre-existing medical history. The misrepresentations occurred during depositions, IMEs (completing patient history forms), and medical treatment. Uncontroverted evidence supports multiple misrepresentations by the Claimant, thus satisfying the first prong.
As to the second prong, the JCC determined the E/C failed to prove the Claimant’s misrepresentations were made for the “purpose of obtaining workers’ compensation benefits.” Regarding the Claimant’s statements of inaccurate preexisting medical history, the JCC ruled,
Dr. Inga was aware that Claimant had a prior lumbar injury from a 1997 motor vehicle accident, and that Claimant had a history of chronic back pain from 2006-2007. (Inga depo. pp. 18-20). Accordingly, I find Claimant did not misrepresent his prior back condition.
(Emphasis. added.) Similarly, the. JCC found the following regarding the Claimant’s misrepresentations to Dr. Delgado,
Additionally, although Dr. Delgado was in possession of Claimant’s medical records indicating a back injury from the 1998-1999 auto accident, Dr. Delgado did not question Claimant about a prior back condition or any discrepancy in the intake form Claimant completed.
(Emphasis added.)
It is clear the JCC regarded the Claimant’s oral and/or written misrepresentation(s) to Drs. Inga and Delgado regarding prior medical history as excused or “nullified” because the doctors actually possessed accurate medical information, regardless of the source. The JCC erred in placing an affirmative duty, not statutorily mandated, on the evaluating physicians to interrogate the -Claimant regarding known misrepresentations. Furthermore, a plain reading of sections-440.105(4) and 440.09(4) provides no basis for the JCC’s exoneration of the misrepresentations. It matters not whether .the doctors were provided with accurate information regarding etiology of injuries or pre-existing medical conditions and treatment by a source other than the Claimant. The purpose of section 440.105(4) is to sanction “any person” who, with the requisite intent, .commits any of the enumerated, prohibited acts.
Regarding the Claimant’s misrepresentation that he was struck in the head with a baseball bat, the JCC reasoned that, because the Claimant never asked for the medical bills of Shands to be paid by the E/C or alleged the bat incident .occurred at work, the . false statements were not made for the.purpose of obtaining workers’ compensation benefits. In the Final Order, the JCC rated:
Although Claimant clearly misrepresen- ■ ted the cause of his facial/sinus condition at Shands, I find he did not do so for the *904 purpose of obtaining workers’ compensation benefits. Specifically, he never claimed he was hit in the face with a baseball bat at work, nor did he seek to obtain treatment at Shands for the condition by asserting it was a work-related injury. Accordingly, Claimant’s misrepresentation to Shands regarding the cause of his sinus condition was not made for the purpose of the obtaining workers’ compensation benefits.
This reasoning misconstrues section 440.105(4) and requires an immediate causal nexus not contemplated by the legislature. Section 440.09(4)(a) mandates forfeiture of benefits if the misrepresentations were made for “the purpose of securing workers’ compensation benefits.” Section 440.105(4) details those acts regarded as having been committed for “the purpose of seeming workers’ compensation benefits.” Section 440.105(4)(b) declares that it “shall be unlawful for any person:”
1. To knowingly make, or cause to be made, any false, fraudulent, or misleading oral or written statement for the purpose of obtaining or denying any benefit or payment under this chapter.
2. To present or cause to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to any provision of this chapter, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim.
3. To prepare or cause to be prepared any written or oral statement that is intended to be presented to any employer, insurance company, or self-insured program in connection with, or in support of, any claim for payment or other benefit pursuant to any provision of this chapter, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim.
(Emphasis added.) Accordingly, the second prong of the misrepresentation analysis may be satisfied if any one of three subsections is triggered.
The Claimant, just a few days before the merits hearing, dropped his claims relating to the facial and head injuries and did not seek payment of the Shands’ medical bill. However, this formal dismissal of claims does not shield the Claimant from the reach of section 440.09(4). A party may not strategically manipulate pleadings to circumvent its sanctions. Contrary to the JCC’s reasoning, the ramifications of the Claimant’s misrepresentations regarding being struck in the head by a baseball bat were not isolated to liability for a Shands medical bill. The misrepresentations were material to claim investigation, compensa-bility, and causation.
Here, the Claimant maintained for months that his facial/sinus injuries were a result of the alleged work accident, and he provided sworn testimony to that effect. It was not until the filing of pre-trial legal memoranda several days before hearing that the Claimant advised he was not seeking benefits related to the facial/sinus injuries. The JCC erroneously required that for benefit denial under section 440.09(4), the E/C had to link the allegedly false or misleading statements directly to the particular injury for which benefits are sought—to the Claimant’s lower back in this instance. As this Court has previously explained, “such a requirement is not found in the law.” THG Rentals & Sales of Clearwater, Inc. v. Arnold, 196 So.3d 485, 487 (Fla. 1st DCA 2016). Furthermore, such an application is contrary to a plain reading of section 440.105(4).
“Honesty is not a luxury to be invoked at the convenience of a litigant.” Baker v. Myers Tractor Servs., Inc., 765 So.2d 149, *905 150 (Fla. 1st DCA 2000). The workers’ compensation system is designed to be efficient and self-executing. See § 440.015, Fla. Stat. It should not be incumbent upon litigants to undertake exhaustive investigation to flush out the mendacities of an adversary. The parties have a right to expect that all statements, whether written or oral, are truthful and adequately responsive.
The Claimant’s argument on appeal that the E/C waived, expressly or impliedly, the misrepresentation defenses during the course of the merits hearing is without merit. Pursuant to section 440.09(4)(a), and having violated section 440.105, the Claimant is not entitled to workers’ compensation benefits.
REVERSE AND REMAND.
B.L. THOMAS, C.J., and WETHERELL, JJ., CONCUR.

. The Claimant was terminated by the Employer in December 2014, based on a positive ■drug test for methamphetamine and amphetamines, after driving a backhoe so far into the water that it had to be towed out.

. Section 440.105, Florida Statutes, lists prohibited activities of employees, employers, insurance entities, licensed medical providers, attorneys, and a broad reference to "any person.” However,' section 440.09(4), Florida Statutes, provides the sanction for employees who violate section 440.105, Florida Statutes.